## CHARLES J. ROGERS, INC. *v.* DEPARTMENT OF STATE HIGHWAYS

1. CONTRACTS—LOSS OF ANTICIPATED PROFITS.

    A contract with a governmental agency which, by its express terms, precluded recovery at other than unit prices and for other than actual work performed and which stated that the quantities in the bid schedule were approximate only and could be decreased precluded recovery for loss of anticipated profits even though the contract materially overstated the amount of work to be performed.

2. CONTRACTS—BASIS OF PAYMENT—TERMS OF CONTRACT.

    A contract with a governmental agency which refers to a set of standard specifications which states that if the quantity of work varied from the original estimate by 25 per cent or less, payment could be had based only on unit price precludes recovery for loss of anticipated profits on the contract where the variance was 17.5 per cent.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 17 Am Jur 2d, Contracts §§ 82, 346, 347.
[4] 17 Am Jur 2d, Contracts § 263.

3. CONTRACTS—LOSS OF ANTICIPATED PROFITS—STANDARD SPECIFICA-
TIONS—CHANGED CONDITIONS.

> Plaintiff, who had entered into a highway construction contract
> with a governmental agency was not entitled to recover loss of
> anticipated profits on the ground that the decrease in quantity
> required was a "changed condition" within the meaning of the
> Standard Specifications for Road and Bridge Construction, even
> though the number of units required had been overestimated
> in the bid schedule by 17.5 per cent, where plaintiff did not
> show any change in unit cost as a result of the decrease in
> the units required.

4. CONTRACTS—INCORPORATION OF OTHER INSTRUMENT—CONSTRUC-
TION.

> Separate instruments are construed together as the agreement
> of the parties where a written contract refers to another
> instrument and makes the terms of the other instrument a
> part of the written agreement.

Appeal from the Court of Claims, Earl E. Borra-
daile, J.  Submitted Division 2 October 12, 1971, at
Lansing.  (Docket No. 11033.)  Decided October 26,
1971.  Leave to appeal denied, 387 Mich 752.

Complaint by Charles J. Rogers, Inc., and Charles
J. Rogers Construction Company against the De-
partment of State Highways and the State of Mich-
igan for loss of anticipated profits in a highway
construction contract.  Summary judgment for de-
fendants.  Plaintiffs appeal.  Affirmed.

*Doyle & Smith, P. C.* (by *Dan L. McNeal*), for
plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Louis J. Caruso,* As-
sistant Attorney General, and *Karl S. Vasiloff* and
*Patrick J. Devlin,* Assistants Attorney General, for
defendants.

Before: McGregor, P. J., and Holbrook and Van
Valkenburg,* JJ.

McGregor, P. J.  Plaintiffs entered into a written
highway construction contract with defendants. The
contract called for an estimated 1,928, 214 units of
embankment compacted in place at a unit price of
$1.49 per unit.  As the work progressed, defendants
discovered a computational error which had resulted
in an overestimate of 337,406 units.  Though de-
fendants notified plaintiffs of this decrease in the
contract quantity, plaintiffs refused to agree to it
and brought suit, claiming loss of anticipated profits.
The trial court granted summary judgment for de-
fendants; plaintiffs appeal as of right.

Plaintiffs attempt to avoid the express language
of the contract and contend that the government is
liable in damages for the loss caused to a contractor,
where the government materially overstates the
amount of work required to be done.  In the instant
case, there is no dispute that the appellees material-
ly overstated the amount of work required to be
done.  It should be noted that the variance was not
more than 25 per cent, but was approximately 17.5
per cent.

Plaintiffs further contend that, as a result of this
error, plaintiffs have been damaged in that they have
been deprived of the earned profits they made on the
units actually performed by virtue of the fact that
they are unable to recover fixed costs and overhead
allocated to the units that were not required.

The contract precludes recovery at other than unit
prices and for other than actually performed quan-
tities.

---

* Former circuit judge, sitting on the Court of Appeals by as-
signment pursuant to Const 1963, art 6, § 23, as amended in 1968.

The contract, in part, provided:

" * * * It being understood and agreed that said plans, specifications and proposal are to be considered as a part hereof."

The bid proposal provided:

"The undersigned [contractor] has examined the plans, specifications and the location of the work described herein and is fully informed as to the nature of the work and the conditions relating to its performance and understands that the quantities shown are approximate only and are subject to either increase or decrease.

"The undersigned hereby proposed to furnish all necessary machinery, tools, apparatus and other means of construction, do all the work, furnish all the materials except as otherwise specified herein; and, for the unit prices or lump sums named in the itemized bid, to complete the work herein described in strict accordance with the plans therefor and in strict conformity with the requirements of the current Standard Specifications For Road and Bridge Construction of the Michigan Department of State Highways and such other special provisions and supplemental specifications as may be a part of this proposal."

The Michigan Department of State Highways Standard Specifications for Road and Bridge Construction (1965) provided:

"1.02.03—The quantities appearing in the bid scheduled are approximate only and are prepared for the comparison of bids. Payment to the contractor will be made only for the actual quantities of work performed and accepted or materials furnished in accordance with the contract. The scheduled quantities of work to be done and materials to be furnished may each be increased, decreased, or omitted as hereinafter provided."

The contract also provided, in § 1.01.13:

"No adjustable items apply on this project."

The Standard Specifications define "adjustable item" as follows:

"Any item specifically designated in the contract for which the contract unit price may be adjusted due to a major increase or decrease in quantity. No adjustment in contract unit price will be made for increases or decreases in the quantity of any other item, regardless of the percentage of increase or decrease."[1]

By virtue of § 1.01.02, *supra,* it may be seen that the parties here contemplated that, regardless of actual quantities ultimately required for performance of the contract, no adjustment was to be made in the contract unit price.

Even if the contract itself had not so provided for unadjustability of items, § 1.04.03 of the Standard Specifications would preclude in the instant case any compensation other than at the contract unit price. Section 1.04.03 provides:

"The commission reserves and shall have the right under the contract to make increases and decreases in quantities and such changes, from time to time, in the plans, in the character of the work and the termini of the project, as may be necessary or desirable to insure the completion of the work in the most satisfactory manner.

"Unless otherwise provided in these specifications, proposal or plans, adjustments in unit prices for increased or decreased quantities shall be governed by the following:

"*If the quantity of any item of work required to complete the project varies from the original esti-*

---

[1] § 1.01.02.

*mate for said items of work by 25 per cent or less, the payment for the quantity of said item shall be made at the contract unit price.*

"Should the quantity of any adjustable item of work be increased more than 25 per cent above the original quantity, the contractor shall not proceed with such additional work until a written agreement has been executed adjusting the unit price for the amount of work over the original contract quantity.

"Should the quantity of any adjustable item of work be decreased more than 25 per cent from the original quantity, compensation will be made upon completion of the item involved based on the contractor's actual extra cost by reason of such decrease below the original contract quantity. Such adjustment in unit price shall be made on the basis of labor, material and equipment cost plus a proportionate amount of overhead and plant charges *and not including anticipated profits,* but in no case shall the product of the adjusted unit price and the number of units of work performed exceed the product of the contract unit price and 75 per cent of the contract quantity. When the final contract cost, the sum of the regular and extra estimates, is greater than the original contract price, overhead and plant charges will not be considered in arriving at the adjusted unit price.

\*   \*   \*

"All other items of work will be paid for at the contract unit price for the quantity required to complete the work."   (Emphasis added.)

The obvious conclusion is that, as the decrease in in the instant case is only about 17.5 per cent, plaintiffs are precluded, by the language of the contract itself, from compensation at other than the contract unit price and for other than actually performed work.

Plaintiffs argue that the decrease in quantity is a "changed condition" giving rise to the applicability

of § 1.04.05 of the Standard Specifications, which provides:

"Should the contractor encounter or the engineer discover, during the progress of the work, physical conditions at the site differing materially from those shown on the plans, or unknown physical conditions of a nature differing materially from those generally recognized as work of the character provided for in the contract, the engineer shall be promptly notified in writing before conditions are disturbed. The engineer will promptly investigate the condition and if he finds that they materially differ and cause an increase or decrease in the cost or the time required for performance of the contract, an equitable adjustment will be authorized. *Unless such alterations and increases or decreases materially change the character of the work or the cost thereof, the altered work will be paid for at the contract unit prices.* If, however, the character of the work or the unit cost thereof are materially changed, an allowance will be made on such basis as is agreed to in advance of the performance of the work." (Emphasis added.)

Even if this section is deemed applicable, it appears that plaintiffs have failed to assert in their pleadings any allegation of changed unit cost due to the reduction in quantity required.

Plaintiffs have attempted by exhibits to establish plaintiffs' unit cost; never did they show any change in unit cost as a result of the decrease in contract quantities required.

It is well-settled law in Michigan that, where a written contract refers to another instrument and makes the terms of the other instrument a part of the written agreement, the separate instruments are construed together as the agreement of the parties. *Whittlesey* v. *Herbrand Company* (1922), 217 Mich 625.

In addition, Michigan law holds that, if the language of the contract is plain and unambiguous, the intention expressed and indicated in the contract holds. *Michigan Chandelier Co.* v. *Morse* (1941), 297 Mich 41; *Sheldon-Seatz, Inc.* v. *Coles* (1947), 319 Mich 401.

Read in the most favorable light, plaintiffs' claim does not entitled them to the relief sought.

Affirmed. No costs ordered.

All concurred.