HILL v GENERAL MOTORS ACCEPTANCE CORPORATION

Docket No. 156325. Submitted May 19, 1994, at Detroit. Decided November 21, 1994, at 9:10 A.M.

Beatrice Hill and Beatrice Strozier brought an action in the Wayne Circuit Court against James Smith, Jr., Rodderick Toliver, and General Motors Acceptance Corporation, seeking damages for injuries allegedly sustained on June 5, 1989, as a result of the negligent operation of an automobile leased by GMAC to Toliver and driven by Smith with Toliver's permission. The leased automobile had been substituted on September 17, 1987, for another automobile leased by Toliver from GMAC on October 31, 1985. The substitution agreement did not refer to or incorporate the terms of the sixty-month lease agreement, but instead erroneously referred to the parties' prior transaction as "a conditional sale (chattel mortgage)." The court, Claudia House Morcom, J., granted summary disposition for GMAC, ruling that GMAC was not an owner of Toliver's automobile for purposes of the owner liability provisions of the Vehicle Code, as amended by 1988 PA 125, effective May 23, 1988. The plaintiffs appealed.

The Court of Appeals held:

Because the substitution agreement made no reference to and did not incorporate the terms of the sixty-month lease agreement between GMAC and Toliver, the arrangement between them following the substitution is not governed by the lease agreement but instead is governed by their practice or course of dealing. A month-to-month lease terminable at will by either party with one month's notice can be inferred from the parties' practice or course of dealing. GMAC can be deemed the owner of Toliver's automobile under §§ 37, 401, and 401a of the Vehicle Code, MCL 257.37, 257.401, 257.401a; MSA 9.1837, 9.2101, 9.2101(1), because the lease term is not for a period that is greater than thirty days.

Reversed.

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic § 673.

Comment Note.—Who is "owner" within statute making owner responsible for injury or death inflicted by operator of automobile. 74 ALR3d 739.

CORRIGAN, J., dissenting, stated that the misnaming of the October 31, 1985, lease in the substitution agreement should not serve to invalidate that sixty-month lease inasmuch as the parties ratified that lease through their practice and course of dealing, that the plaintiffs lack standing to raise the statute of frauds in seeking to avoid the sixty-month lease, and that a month-to-month lease should not be inferred because the trial court did not consider the question, and the failure of the Court of Appeals to do so would not result in a miscarriage of justice. The grant of summary disposition for GMAC should be affirmed.

AUTOMOBILES — LEASED AUTOMOBILES — VEHICLE CODE — OWNER'S LIABILITY.

A person engaged in the business of automobile leasing pursuant to leases providing for the use of automobiles for periods greater than thirty days is not the owner of the automobiles for purposes of the owner liability provisions of the Vehicle Code; however, failure to refer to or incorporate the terms of a long-term lease in a subsequent agreement for the substitution of another automobile for the one originally leased may result in a month-to-month lease under which the lessor would be civilly liable for any injury occasioned by the negligent operation of the substituted automobile (MCL 257.37, 257.401, 257.401a; MSA 9.1837, 9.2101, 9.2101[1]).

*Richard A. Lenter, P.C.* (*Ronald M. Rothstein,* of Counsel), for Beatrice Hill and Beatrice Strozier.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *Mark C. Smiley*), for General Motors Acceptance Corporation.

Before: MICHAEL J. KELLY, P.J., and CORRIGAN and C. D. CORWIN,* JJ.

MICHAEL J. KELLY, P.J. Plaintiffs appeal as of right an order of the circuit court granting defendant General Motors Acceptance Corporation's motion for summary disposition under MCR 2.116(C) (10). We reverse.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

I

On October 31, 1985, Rodderick Toliver entered into a signed or forged lease agreement with GMAC for a 1986 Buick Skylark. The sixty-month agreement required Toliver to purchase insurance and contained an option to buy, which could be exercised before or at the end of the lease term. The agreement also contained a provision enabling Toliver to continue the lease in the event the Skylark was destroyed by substituting a comparable vehicle. Ownership of the vehicle was registered in GMAC's name.

On August 29, 1987, the Skylark was totaled in a collision. On September 17, 1987, Toliver exercised the option of substitution contained in the lease and obtained a 1986 Buick Somerset. On June 5, 1989, the Somerset collided with a car driven by plaintiff Beatrice Hill. Plaintiff Beatrice Strozier was a passenger in Hill's car. At the time of the accident, James Smith, Jr., was driving the Somerset with Toliver's consent. On the basis of GMAC's status as titleholder of the vehicle, plaintiffs sued GMAC for damages sustained as a result of the collision. On November 22, 1991, the trial court granted GMAC's motion for summary disposition on the ground that GMAC did not qualify as "owner" of the Somerset for purposes of the owner liability provisions of the Vehicle Code, MCL 257.401; MSA 9.2101.

II

A motion for summary disposition under MCR 2.116(C)(10) tests whether a genuine issue of material fact exists for the trier of fact to resolve. In reviewing such a motion, this Court construes all relevant affidavits, depositions, admissions, and

other documentary evidence in favor of the non-
moving party. Summary disposition is inappropri-
ate where the evidence presents a genuine issue of
material fact upon which reasonable minds could
differ. *Farm Bureau Mutual Ins Co v Stark,* 437
Mich 175, 184-185; 468 NW2d 498 (1991).

III

The issue on appeal is whether the trial court
erred in granting GMAC's motion for summary
disposition under the owner liability provisions of
the Vehicle Code, which exempt lessor-owners
from liability under special circumstances. These
provisions were amended by 1988 PA 125.

Section 401 of the preamendment code imposed
liability on owners of negligently operated motor
vehicles. MCL 257.401; MSA 9.2101. Section 37 of
the code defined "owner" as follows:

"Owner" means: (a) Any person, firm, associa-
tion, or corporation renting a motor vehicle or
having the exclusive use thereof, under a lease or
otherwise, for a *period of greater than 30 days.*
(b) A person who holds the legal title of a
vehicle or in the event a vehicle is the subject of
an agreement for the conditional sale or lease
thereof with the right of purchase upon perfor-
mance of the conditions stated in the agreement
and with an immediate right of possession vested
in the conditional vendee or lessee or in the event
a mortgagor of a vehicle is entitled to possession,
then such conditional vendee or lessee or mortga-
gor shall be deemed the owner. [MCL 257.37; MSA
9.1837.]

In *Barksdale v Nat'l Bank of Detroit,* 186 Mich
App 286; 463 NW2d 258 (1990), this Court held
that § 37(b) did not deem both the lessee and lessor
"owners" of a vehicle leased under an agreement

granting the lessee an option to purchase and an immediate right to possession; rather, § 37 excepted the lessor from the definition of "owner" and deemed the lessee "owner." *Id.* at 289-290, citing *Moore v Ford Motor Credit Co,* 166 Mich App 100, 104; 420 NW2d 577 (1988).

The amended code now provides in pertinent part:

> "Owner" means any of the following:
> (a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.
> (b) Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.
> (c) A person who has the immediate right of possession of a vehicle under an installment sale contract. [MCL 257.37; MSA 9.1837.]

Section 401a provides:

> As used in this chapter, "owner" does not include a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days. [MCL 257.401a; MSA 9.2101(1).]

While § 401 still imposes liability on "owners" of negligently operated vehicles, paragraph 2 reinforces § 401a by exempting from liability lessors who meet the criteria set forth in § 401a. MCL 257.401(2); MSA 9.2101(2).

Under the terms of the original lease agreement between GMAC and Toliver, GMAC does not qualify as an "owner" for purposes of both the pre-1988 and post-1988 versions of the Vehicle Code. With respect to the preamendment provisions, it is un-

disputed that the agreement granted the lessee immediate possession and an option to purchase. With respect to the amended provisions, it is undisputed that GMAC is engaged in the business of leasing motor vehicles and that the original lease agreement extended well beyond thirty days.

However, plaintiffs challenge the validity of the original lease agreement and the substitution agreement, alleging that the former contains a forgery and that the latter lacks a signature by a proper GMAC agent and fails to incorporate the original lease agreement. In response, GMAC contends that these arguments arise under the statute of frauds, which plaintiffs, as nonparties to the lease and substitution agreements, may not invoke. GMAC also argues that the lease agreement does not fall under the statute of frauds because it is capable of being performed within one year.

The statute of frauds, MCL 566.132; MSA 26.922, provides in pertinent part:

> In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> (a) An agreement that, by its terms, is not to be performed within 1 year of the making of the agreement.

This Court has ' construed the one-year rule strictly:

> [I]f there is *any possibility* that an oral contract is capable of being completed within a year, it is not within the statute of frauds, even though it is clear that the parties may have intended and thought it probable that it would extend over a

longer period and even though it does so extend. [*Drummey v Henry,* 115 Mich App 107, 111; 320 NW2d 309 (1982). Emphasis added.]

GMAC is correct in asserting that the statute of frauds does not apply to the original lease agreement because the agreement was capable of being performed within one year of its making. Although it was a five-year lease, Toliver had the option to purchase the car and was entitled to exercise this option within the first year of the lease. This alone is sufficient to remove the agreement from the scope of the statute of frauds.

Even assuming that the lease agreement had to be in writing, GMAC is also correct in asserting that plaintiffs, as third parties to the lease and substitution agreements, may not assert the statute of frauds in an effort to have the agreement declared void. This Court held in *Hoehner v Western Casualty & Surety Co,* 8 Mich App 708, 714-715; 155 NW2d 231 (1967), that the statute of frauds is a personal defense available only to parties to a contract.

However, GMAC's arguments do not preclude plaintiffs from challenging the content of the lease agreement between GMAC and Toliver. The owner liability provisions of the Vehicle Code grant an injured party recourse to the lessor-owner of a vehicle under special circumstances that are determined in part by the terms of the lease agreement. The statute of frauds declares void an unwritten agreement that cannot be performed within one year. The condition precedent to the application of the statute of frauds is the existence of such an agreement. Nothing in the statute of frauds or in the case law concerning a third party's standing to invoke the statute prohibits that party from challenging the content of the underlying agreement

and thereby defining rights under the owner liability provisions of the Vehicle Code. Cf. *Hoehner, supra* at 713-714 (treating as separate issues the defendant's arguments, first, that there was insufficient evidence to infer the existence of a contract between the plaintiff and a third party and, second, that the statute of frauds invalidated that contract).

IV

Plaintiffs argue that the terms of the original lease do not automatically apply to the Somerset. We agree. The only document mentioning the Somerset is the substitution agreement. That document contains no lease terms of its own. Although it purports to incorporate by reference "the conditional sale contract (chattel mortgage) in the original amount of $_____ dated 10 31 85 19_____ between said Rodderick Toliver (Buyer) and John Rogin Buick Inc (Dealer)," no conditional sale contract or chattel mortgage exists in the record. The substitution agreement makes no reference to a prior lease agreement. Apparently the dealer reached in its form drawer and pulled out an obsolete form.

GMAC urges this Court to deem the lease agreement the equivalent of a conditional sale or chattel mortgage. We cannot do so. Under Michigan law, leases, conditional sales, and chattel mortgages are separate and distinct transactions.[1] A

---

[1] The enactment of the Uniform Commercial Code has modified much of the law concerning conditional sales, chattel mortgages, and leases. Conditional sales are now governed by Article 9 of the UCC on secured transactions, MCL 440.9101 *et seq.*; MSA 19.9101 *et seq.* The same article also governs chattel mortgages and leases intended as security. However, while the UCC may have rendered some of the distinctions between these transactions irrelevant by treating them all as "security interests," it does not alter the basic definitions of these transactions. Their identities remain separate for terminological purposes.

chattel mortgage is "merely a security, the essentials of which are the existence of a debt, legal liability or obligation, and an intention to secure the same by some form of conveyance" of personal property. 5 Michigan Law & Practice, Chattel Mortgages, § 1, p 251, citing *Lynch v Nat'l Acceptance Co of Chicago,* 329 Mich 615; 46 NW2d 403 (1951), and *Wasey v Whitcomb,* 167 Mich 58; 132 NW 572 (1911). A chattel mortgage is distinct from a conditional sale in that, in the former, the seller has a lien on the property with the right to reclaim, resell it, and sue for the deficiency, and in the latter, the seller may retake the property on default and rescind the sale. 5 Michigan Law & Practice, p 254, citing *Flint Furniture Mart v Beckley,* 342 Mich 122; 68 NW2d 782 (1955), among other cases. The essential distinction is whether the parties intend the condition relevant to the transfer of title to be precedent (conditional sale) or subsequent (chattel mortgage). 5 Michigan Law & Practice, p 254, citing *Burroughs Adding Machine Co v Wieselberg,* 230 Mich 15; 203 NW 160 (1925). Both of these transactions are distinct from a lease with an option to purchase.[2] Where a contract provides that a person receiving certain goods is the lessee of those goods, has an obligation to pay a stipulated rental without obtaining title, and has an option to purchase the property at the end of the lease, the contract may not be deemed one of sale.[3] See *Hickey v Lundy,* 168 Mich 336; 134 NW 4 (1912).

---

[2] In general, leases are governed by Article 2A of the UCC, MCL 440.2A101 *et seq.*; MSA 19.2A101 *et seq.,* not Article 9, which governs security interests in the form of chattel mortgages, conditional sales, and leases intended as security interests.

[3] Whether a lease is intended as security and therefore governed by Article 9 of the UCC depends on a number of factors outlined in the definition of "security interest" found in § 1-201(37) of the UCC, MCL 440.1201(37); MSA 19.1201(37). Under this provision, the original lease agreement between Toliver and GMAC does not qualify as a lease intended as security and may not be deemed the equivalent of other

Accordingly, we decline to deem the terms "conditional sale" and "chattel mortgage" interchangeable with the term "lease." As a result, the substitution agreement for the Somerset incorporates no lease terms. This analysis strictly construes the plain language of the substitution agreement against GMAC, which drafted it.

V

Although there is no signed lease agreement concerning the Somerset, Toliver received it from GMAC to replace the Skylark and paid for it monthly. Obviously, there was a voluntary arrangement, and the task remains to determine the factual nature of that arrangement and its legal effect. More precisely, the task is to determine whether a genuine issue of material fact exists regarding the terms or existence of a lease agreement for the Somerset.

A

Depending on the terms of the agreement, GMAC's status as "owner" of the Somerset may be different under the pre-1988 and post-1988 versions of the Vehicle Code. Thus, in order to determine whether any issues of fact are material, we must also determine which owner liability provisions apply in this case although this issue was not addressed by the trial court.

The lease and substitution agreements were executed before the effective date of the 1988 amendments, whereas the automobile collision occurred after the effective date. Michigan courts have fol-

transactions that qualify as security interests under Article 9 of the UCC, such as conditional sales and chattel mortgages.

lowed the general rule that the relevant inquiry in determining the applicability of a statute is the date on which the cause of action arose. See *In re Certified Questions,* 416 Mich 558, 573; 331 NW2d 456 (1982); *Franklin v Ford Motor Co,* 197 Mich App 367, 368-369; 495 NW2d 802 (1992). In this case, plaintiffs' causes of action are not based on the lease or substitution agreements between Toliver and GMAC. These agreements did not involve plaintiffs in any way; rather, plaintiffs' causes of actions are tort claims against the owner of the Somerset for negligent operation of the vehicle. These claims did not arise until the date of the accident on June 5, 1989, after the 1988 amendments took effect. No party obtained any vested rights under the code until that date. Accordingly, the postamendment provisions on owner liability apply in this case.

B

With respect to the nature of the Somerset lease arrangement, the record reveals no evidence of a "meeting of the minds" between Toliver and GMAC on all the material facts. *Groulx v Carlson,* 176 Mich App 484, 491; 440 NW2d 644 (1989). While it might be inferred that the parties intended to follow the terms of the original lease agreement, plaintiffs have claimed and produced evidence that Toliver's signature on the original lease agreement was forged. Toliver testified that he never signed the agreement because he had bargained for a forty-eight-month lease, not the sixty-month term in the written agreement. The parties never reached agreement on a vital contract provision for owner liability purposes: the term of the lease. GMAC has presented no evidence that a specific term was discussed with Toliver, let alone that one

was agreed upon.⁴ Instead, GMAC's arguments focus on the statute of frauds and rely on the content of documents that, as we have concluded, do not in themselves provide any lease terms for the Somerset.

In the absence of an agreement between GMAC and Toliver, we must look to the practice of the parties to determine the nature of the lease arrangement. In this case, Toliver received a Somerset registered in GMAC's name and paid GMAC on a monthly basis. We therefore infer a month-to-month term, terminable at will by either party on one month's notice.⁵ Cf. *Swart v Western Union Telegraph Co,* 142 Mich 21, 23; 105 NW 74 (1905).⁶

⁴ GMAC's argument that Toliver ratified the original lease agreement by making payments in accordance with that agreement and exercising his right to substitute applies only as an exception to the application of the statute of frauds, which, as we have concluded, is not at issue here. Ratification makes enforceable agreements that are otherwise void or invalid, whether for fraud, lack of authority, incompetency, or some other reason. See Black's Law Dictionary (6th ed). Ratification may be express or implied, but an understanding of all the material facts necessary to an intelligent assent is essential. *Apfelblat v Nat'l Bank Wyandotte-Taylor,* 158 Mich App 258, 262; 404 NW2d 725 (1987).

⁵ GMAC concedes that, "even if the written five year lease is disregarded, the undisputed facts of record establish that Tolliver [sic] and GMAC were, at least, operating under, and fully complying with, an implied agreement for a lease of an indefinite term of *less than one year* . . . ." (Emphasis added.) GMAC does not state what the exact term of such an implied agreement would be, but we do not believe that the circumstances support a term of "less than one year" unless that term is month to month. While GMAC makes this concession only in the event that the written agreement is declared void under the statute of frauds, our holding that there was no "meeting of the minds" upon which to find an agreement at all places us in the like position of determining the nature of the arrangement where no lease agreement exists.

⁶ The *Swart* Court held that where the parties to a lease concerning office space agreed to a five-year lease at a certain sum per year, payable monthly, but failed to execute a written lease and to agree upon the lessor's franking privilege and the office hours, there was no meeting of the minds that would constitute a valid parol lease by which the rights of the parties could be determined during the occupancy of the space, and the occupancy was under a tenancy at will, terminable upon a month's notice.

This brings the lease within the thirty-day rule of § 401a and makes GMAC "owner" of the Somerset for purposes of the owner liability provisions.[7]

Accordingly, the trial court erred in ordering summary disposition for GMAC on the basis that it does not qualify as the "owner" of the Somerset under the Vehicle Code.

Reversed.

C. D. CORWIN, J., concurred.

CORRIGAN, J. (dissenting). I dissent from the majority's holding that defendant General Motors Acceptance Corporation may be found liable pursuant to the owner's liability statute, MCL 257.401; MSA 9.2101, as an owner of the 1986 Buick Somerset leased to Rodderick Toliver. I would affirm the circuit court's ruling that GMAC is not legally responsible under the amended provisions of the Vehicle Code. See *Barksdale v Nat'l Bank of Detroit,* 186 Mich App 286; 463 NW2d 258 (1990). I cannot agree that a genuine issue of material fact exists on this record.

I acknowledge that 1988 PA 125, effective May 23, 1988, controls the outcome of this case. MCL 257.401(2); MSA 9.2101(2) now provides:

> A person engaged in the business of leasing

---

[7] While some months have thirty-one days, and § 401a clearly defines "owner" in terms of lease terms that are greater or less than thirty days, we decline to interpret this statutory provision in such a way as to deem GMAC the "owner" in February, April, June, September, and November but not in the remaining months. Notwithstanding the plain language of § 401, we are not obliged to apply such language where, as here, it would lead to an absurd result. *People v Bewersdorf,* 438 Mich 55, 68; 475 NW2d 231 (1991); *Wallace v Consolidated Freightways,* 199 Mich App 141, 146; 500 NW2d 752 (1993). Because a thirty-one-day month borders on the short lease term contemplated by the Legislature in deeming a lessor of a motor vehicle the "owner" for civil liability purposes, we conclude that a "month-to-month" lease arrangement makes the lessor an "owner" in all months of the year.

motor vehicles, who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days shall not be liable at common law for damages for injuries to either person or property resulting from the operation of the leased motor vehicle.

MCL 257.401a; MSA 9.2101(1) excludes from the definition of owner "a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days." 1988 PA 125 and 126 established that a person in the business of leasing motor vehicles who leases a vehicle for more than 30 days is not an owner for purposes of the Vehicle Code and the Insurance Code.[1]

To defeat GMAC's status as a lessor for longer than 30 days, the majority finds the 1985 lease agreement between Rodderick Toliver and GMAC inoperative. It arrives at this result principally

---

[1] At the same time 1988 PA 125 amended the Vehicle Code, the Legislature amended the Insurance Code in 1988 PA 126. The acts would not take effect unless both were enacted. MCL 500.3101(2)(g); MSA 24.13101(2)(g) defines "owner" as:

> (ii) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.

MCL 500.3103(h); MSA 24.13103(h) excludes lessors as described, *supra,* from the definition of registrant.

Contrary to plaintiffs' suggestion, the amendments were not designed to cure a split of authority in this Court. Both the informal Senate Fiscal Agency and House Legislative analyses state that the amendments were designed to remove impediments to banks and credit unions engaging in the automobile-leasing business. The amendments would permit these institutions to compete with subsidized financing arrangements sponsored by the automobile companies by allowing these entities to forego the purchase of contingency and excess automobile insurance coverage.

because the 1987 product substitution agreement between Toliver and GMAC termed the 1985 lease a "conditional sales contract (chattel mortgage)" rather than a lease with option to purchase. The substitution agreement otherwise clearly identified the October 31, 1985, transaction between Toliver and GMAC. We should not treat an immaterial misnomer in a later written instrument as a device to defeat the discernible intent of the parties in both written instruments to enter and perform under a long-term automobile lease. Even if Toliver did not sign the lease, the record reflects a valid long-term lease between GMAC and Toliver.

Rodderick Toliver and GMAC performed their respective obligations under the lease for nearly four years. In his responses to requests for admissions, Toliver admitted that (1) on October 31, 1985, he intended to lease a 1986 Buick Skylark from John Rogin Buick (GMAC's agent) for forty-eight months; (2) he obtained exclusive use and possession of the 1986 Buick Skylark described in the lease on October 31, 1985, the same date as the lease agreement; (3) he insured the Buick Skylark, naming GMAC as an additional insured, just as the 1985 lease required. Toliver also acknowledged that he continuously made monthly payments in the specific amount of $282.18, as set out in the 1985 lease.

Toliver also admitted that after the Buick Skylark was totaled in an August 1987 accident, on September 17, 1987, he signed a product substitution agreement with GMAC. The 1985 lease allowed Toliver to elect to substitute another vehicle if the first vehicle was destroyed. Toliver took immediate possession of a used 1986 Buick Somerset in place of the Buick Skylark. He continued to make monthly payments of $282.18 on the Buick Somerset. His insurance was also transferred to the

substitute vehicle. Finally, he admitted that his vehicle registration stated that the substituted 1986 Buick Somerset was insured by Farmers Insurance Group, as required in the original lease agreement.

Both Toliver and GMAC fully complied with and ratified the terms and conditions of the lease agreement and the agreement of substitution from October 31, 1985, through September 17, 1987, the date of the substitution agreement, through the June 5, 1989, accident. Full performance by both parties in accord with the agreement has the same legal effect as if the agreement had been in writing. 2 Corbin, Contracts, § 285, p 40. The course of dealing and course of performance by these parties during the nearly four-year period of compliance with the lease agreement precludes any question of fact regarding the scope of the parties' mutual promises or representations. See, e.g., *State Bank of Standish v Curry,* 442 Mich 76; 500 NW2d 104 (1993) (language and conduct should be understood in light of the circumstances, including course of dealing, course of performance, and trade usage).

The substitution agreement erroneously labeled the October 31, 1985, transaction between Toliver and GMAC as a "conditional sales contract (chattel mortgage)" rather than a lease with option to purchase. The agreement otherwise clearly identifies the earlier transaction. The agreement of substitution specifically makes reference to the earlier agreement between Toliver and GMAC dated October 31, 1985, and provides that the substituted vehicle is subject to the same terms, provisions, and conditions as the October 31, 1985, transaction. The mislabeling did not affect the substantial rights of either party. The misnomer should not serve to invalidate both documents or preclude a

finding as a matter of law that GMAC and Toliver were parties to a lease in excess of thirty days.

A misnomer in a later written instrument does not render the earlier instrument void. Instead, if a written instrument refers to another instrument, and makes the terms of that other instrument a part thereof, both instruments should be construed together as the agreement of the parties. *Boyd v GMAC,* 162 Mich App 446, 453; 413 NW2d 683 (1987); *Culver v Castro,* 126 Mich App 824, 826; 338 NW2d 232 (1983); *Charles J Rogers, Inc v Dep't of State Hwys,* 36 Mich App 620; 194 NW2d 203 (1971). 1 Corbin, Contracts, § 106, p 476 advises courts to ascertain the true common intent of the parties at the time a contract is consummated, despite the presence of conflicting assertions in subsequent litigation.

I do not disagree with the assertion that leases, conditional sales contracts, and chattel mortgages are separate and distinct transactions. However, where documents contain simple errors of description, we should construe the written documents in light of the true intention of the parties.

In other contexts, we would not hesitate to overlook mislabeling where the substantial rights of the parties have not been affected. See, e.g., *Lyons v Grand Rapids,* 305 Mich 309; 9 NW2d 552 (1943) (misnomer in pleading); *Hiner v State Hwy Comm,* 96 Mich App 497; 292 NW2d 709 (1980) (misnomer of defendant).

I also question the reference to Uniform Commercial Code principles governing the sale of goods. *Whitcraft v Wolfe,* 148 Mich App 40; 384 NW2d 400 (1985), held that where the specific goods involved are automobiles, the UCC's provisions must be reconciled with the Vehicle Code. Further, the Vehicle Code preempts the UCC with regard to questions relating to the transfer of

ownership. Under these circumstances, the Vehicle Code provisions defining ownership should be our sole point of reference.

I cannot agree that plaintiffs, as third parties to the lease, have standing to void the lease by invoking the statute of frauds. Third parties lack standing to enforce the provisions of the statute of frauds. *Hoehner v Western Casualty & Surety Co,* 8 Mich App 708; 155 NW2d 231 (1967). The application of the statute of frauds is an affirmative defense. MCR 2.111(3)(a); *R G Moeller Co v Van Kampen Construction Co,* 57 Mich App 308, 311; 225 NW2d 742 (1975). Just as in *Hoehner,* plaintiffs were not parties to the lease they seek to void, nor were they in privity with Toliver or GMAC. They are strangers to the lease agreement between GMAC and Toliver. Plaintiffs' arguments that the 1985 lease was not signed by Toliver and that the substitution agreement was not signed by GMAC arise under the statute of frauds. Plaintiffs accordingly lack standing to present them. 2 Corbin, Contracts, § 289, p 54.

Finally, the majority concludes that the appropriate remedy in this case is to treat the arrangement as a month-to-month lease. The circuit court permitted the parties to brief the question whether a lease found void should be treated as a month-to-month lease, but did not rule on that issue. This Court does not consider issues not ruled on below, unless it finds a miscarriage of justice. *Kamalnath v Mercy Memorial Hosp Corp,* 194 Mich App 543, 551; 487 NW2d 499 (1992). I see none here.

I would affirm.