85 F.3d 628
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ESSEX CRANE RENTAL CORPORATION, Plaintiff-Appellee,
v.
SUPERIOR EQUIPMENT, et al., Defendants,
General Funding Corporation, Intervening Defendant,
Counter-Plaintiff, and Appellant.
 No. 94-1733.
 United States Court of Appeals, Sixth Circuit.
 May 13, 1996.
 
 Before: NORRIS, SILER, and GODBOLD,* Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 In this appeal we are asked to resolve competing claims to ownership of an industrial crawler crane, specifically a 3900W Manitowoc Crane, Serial Number 395080. Both Essex Crane Rental Corporation ("Essex") and General Funding Corporation ("General") advance compelling reasons why the crane rightfully belongs to them. Having had the benefit of oral argument, and having carefully reviewed the briefs of the parties and the record on appeal, we affirm the district court's judgment of May 25, 1994, that declared Essex to be the crane's rightful owner.
 
 
 2
 This diversity action arose because of the fraudulent activities of defendant Mark Edward Malcolm.[1] The record indicates that Essex bought the subject crane in 1982. On July 31, 1992, Essex leased it to Malcolm, whose company, Malcolm Crane, Inc., was in the business of crane repair, rentals, and sales. Within the month, Malcolm purported to sell the crane to General for $100,000, representing that he had purchased it in 1990 from Kip Anderson; he provided a bill of sale for $165,000 to substantiate his ownership. General simultaneously entered into a lease-back arrangement with Malcolm for a sixty-month period; the lease called for total payments to General of $135,315.60. When Malcolm defaulted on lease payments owed Essex, it took possession of the crane. Essex then sued Malcolm, and General intervened claiming ownership of the crane. These facts are not disputed by either party.
 
 
 3
 In essence, General's claim at trial was that it was entitled to the crane, as a buyer in the ordinary course of business. In making this claim, General relied upon Michigan's version of the Uniform Commercial Code:
 
 
 4
 (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
 
 
 5
 (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
 
 
 6
 Mich.Comp.Laws Ann. § 440.2403(2)-(3) (West 1994).
 
 
 7
 "Buyer in ordinary course of business" is defined in the Code as:
 
 
 8
 a person who in good faith and without knowledge that the sale to him or her is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.
 
 
 9
 Mich.Comp.Laws Ann. § 440.1201(9) (West 1994).
 
 
 10
 Essex, on the other hand, maintained that General could not be a buyer since the transaction between it and Malcolm was not a purchase, but, instead, was a financing transaction.
 
 
 11
 As Essex correctly points out on appeal, in order for General to prevail under § 440.2403(2), it had to establish that:
 
 
 12
 1. General Funding bought the crane;
 
 
 13
 2. In good faith and without knowledge that its sale violated Essex's rights;
 
 
 14
 3. From Malcolm, who was engaged in the business of selling goods of that kind; and
 
 
 15
 4. The purchase occurred in the ordinary course.
 
 
 16
 The district court agreed with Essex that General could not establish the first element, that it bought the crane.
 
 
 17
 After conducting a bench trial, the district court issued an oral opinion. The court held that
 
 
 18
 the transaction between General Funding and Malcolm for the crane at issue was a financing transaction, which created a security interest. As a result, the Court finds that General Funding is not and cannot be a buyer in the ordinary course. That General Funding cannot rely on U.C.C. 2-403(2); and that ownership of the Manotowac [sic] 3900W, 395080, remain with Essex.
 
 
 19
 In the course of determining that Malcolm and General were involved in a financing transaction, the district court parsed the evidence that would support a purchase/lease-back (General's version) or a loan/security interest (Essex's version). It concluded that the facts supported the latter, rather than the former.
 
 
 20
 The Commentary that accompanies the statutory definition of "security interest" acknowledges the historical difficulty in distinguishing between a lease and a security interest. Mich.Comp.Laws Ann. § 440.1201(37) (West 1994) (Comment 37).[2] As currently written, the statute points out that "[w]hether a transaction creates a lease or a security interest is determined by the facts of each case." The statute goes on, however, to select some factual scenarios which, if present, would appear to be conclusive of the existence of a security interest. These factual scenarios are presented in the course of a two-pronged inquiry. Under the first inquiry, a security interest exists "if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee." Mich.Comp.Laws.Ann. § 440.1201(37). The lease between General and Malcolm meets this threshold requirement.
 
 
 21
 To satisfy the second prong, the facts of the transaction must satisfy any one of four listed circumstances:
 
 
 22
 (a) The original term of the lease is equal to or greater than the remaining economic life of the goods.
 
 
 23
 (b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become owner of the goods.
 
 
 24
 (c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
 
 
 25
 (d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
 
 
 26
 Mich.Comp.Laws Ann. § 440.1201(37)(a)-(d). See also Hill v. General Motors Acceptance Corp., 525 N.W.2d 905, 910 n. 3 (Mich.Ct.App.1995). In its opinion, the district court did not identify any of the four circumstances as being present in this case, although it did explicitly find subsection (a) to be inapplicable. Our review of the record has not revealed to us facts that would support the existence of any of the four circumstances listed in the second prong of the inquiry.
 
 
 27
 In the absence of facts that the statute deems conclusive of the existence of a security interest, the district court looked to other facts to determine if the transaction created a lease or a security interest. The court mentioned a number of factors which support its conclusion that the transaction was a security interest disguised as a lease. Among those factors were that the rental rate and term of the lease did not conform to those generally used in the crane leasing industry; that the amount paid by General to Malcolm was far lower than the crane's real value; that General never took physical possession of the crane; that the lease was non-terminable by the lessee and included an acceleration clause to be invoked in the event of default; that General's annual reports indicated it had a financial, as opposed to an ownership, interest; and that "the actions taken by General Funding are typical of the kind taken by a financial institution."
 
 
 28
 These facts do indeed support the district court's conclusion that the transaction was a financing transaction (loan/security interest), as opposed to a purchase with a lease-back arrangement. Accordingly, General was not a "buyer" and could not prevail against Essex under the provisions of § 440.2403(2).
 
 
 29
 General would have us conclude that the district court's findings address only whether Malcolm and General intended their transaction to create a security interest or a lease, and points out that the statute's former reference to intent of the parties was deleted from § 440.1201(37). General correctly notes the amendment to the statute. However, as the result of that amendment, "[w]hether a transaction creates a lease or a security interest continues to be determined by the facts of each case." Mich.Comp.Laws Ann. § 440.1201(37) (West 1994) (Comment 37). In our view, the district court's holding was consistent with the amended statutory language, as the court recited facts that support an objective determination that the transaction created a security interest. The few references in the court's opinion to intent do not change that reality. In fact, the district court expressly eschewed the former subjective intent standard when it noted that "neither the use of the formalities of a purchase nor the subjective intent of General Funding to purchase are dispositive."
 
 
 30
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable John C. Godbold, Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 Malcolm is not a party to this appeal
 
 
 [2]
 Section 440.1201(37) reads as follows:
 (37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding
 shipment or delivery to the buyer (section 2401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts or chattel paper which is subject to article 9. The special property interest of a buyer of goods on identification of those goods to a contract for sale under section 2401 is not a "security interest", but a buyer may also acquire a "security interest" by complying with article 9. Unless a consignment is intended as security, reservation of title thereunder is not a "security interest", but a consignment in any event is subject to the provisions on consignment sales (section 2326). Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and any of the following:
 (a) The original term of the lease is equal to or greater than the remaining economic life of the goods.
 (b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods.
 (c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
 (d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
 A transaction does not create a security interest merely because it provides any of the following:
 (a) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into.
 (b) The lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods.
 (c) The lessee has an option to renew the lease or to become the owner of the goods.
 (d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed.
 (e) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.
 As used in this subsection:
 (a) Additional consideration is not nominal if when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.
 (b) "Present value" means the amount as of a date certain of 1 or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.
 (c) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into.
 Mich.Comp.Laws Ann. 440.1201(37) (West 1994) (footnotes omitted).