*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE FRAZIER, Personal Representative of the
ESTATE OF ARNOLD THEODORE HOLMES,

        Plaintiff-Appellee,

v

LARRY DAVENPORT,

        Defendant-Appellant.

UNPUBLISHED
August 17, 2023

No. 361604
Wayne Circuit Court
LC No. 21-014576-AV

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

Defendant, Larry Davenport, appeals by leave granted[1] the circuit court's order affirming the district court's verdict in favor of plaintiff, Diane Frazier as personal representative of the Estate of Arnold Theodore Holmes, and the order denying defendant's motion for a new trial. We reverse and remand to the district court for further proceedings.

## I. BACKGROUND

This case arises from the purported sale of property under a land contract. In May 2015, defendant began living in a property owned by Holmes. Defendant occupied the property from May 2015 until after Holmes passed away in December 2019. During his occupancy, defendant made numerous payments to Holmes, totaling about $76,000. Two of the payment receipts state that the payments were for the purchase of the property. One receipt had a checkmark in a bubble next to a preprinted notation saying "FOR RENT." Most of the receipts identify a monthly payment period and a running total of the amount defendant paid to Holmes. Defendant did not make any payments after December 2018.

---

[1] *Estate of Holmes v Davenport*, unpublished order of the Court of Appeals, entered October 5, 2022 (Docket No. 361604).

In May 2020, plaintiff, Holmes' sister, became the personal representative of Holmes' estate. In her capacity as the estate's personal representative, plaintiff sent defendant multiple notices to leave the property, which he refused to do. This led plaintiff to file suit in district court to recover possession of the property. In her complaint, plaintiff alleged that defendant was a tenant and had no right to continued occupancy. In response, defendant claimed he had an equitable interest in the property by virtue of a land contract he entered into with Holmes. If defendant's argument prevailed, then plaintiff's cause of action necessarily failed because it was premised on defendant's lack of ownership interest in the property. Thus, the issue for trial was whether defendant's occupancy of the property was based on a land contract.

During the bench trial, two documents titled "land contract" were admitted as plaintiff's Exhibit 6 and Exhibit 7. These exhibits were offered to prove the contents of the land contract because the parties could not locate the original. Exhibit 6 was dated May 4, 2015, and listed a down payment of $5,000 and a purchase price of $100,000. Exhibit 7 was dated April 1, 2015, and listed a down payment of $10,000 and a purchase price of $106,000. The terms of payment between the two exhibits differ, but otherwise the exhibits contained largely the same duties and terms, including a request for a five-year window for the buyer, defendant, to complete the transaction.

Notary public Diantha Tillman testified that she prepared a land contract for Holmes and defendant, witnessed defendant and Holmes sign the land contract, and notarized their signatures. Tillman said that Exhibit 7 was not the document she notarized, but the terms of that document matched the terms of the land contract she prepared and notarized. Tillman denied drafting Exhibit 6, and said that both exhibits appeared to have been altered. Defendant's neighbors, Brian Toney and Regina Toney, testified that they had previously purchased their home from Holmes under a land contract, and that defendant and Holmes entered into a similar land contract so defendant could purchase the property from Holmes while occupying it.

Defendant also testified, claiming that he entered into a land contract with Holmes in March or April 2015, wherein he agreed to purchase the property from Holmes for $106,000, to be paid in $2,000 monthly payments, with a $10,000 down payment. Defendant admitted that neither Exhibit 6 nor Exhibit 7 was the land contract he signed with Holmes and Tillman, and explained that he could not produce the original, notarized land contract because his "estranged wife took it." Defendant also admitted that he failed to fully comply with the terms of the purported contract. Defendant further testified that he independently made improvements to the property during his occupancy, including replacing the boiler.

After four days of testimony, the district court entered a verdict in favor of plaintiff. While the district court made a number of factual findings and legal conclusions, the court did not make any findings about whether a land contract existed. Rather, the district court found that neither Exhibit 6 nor Exhibit 7 constituted valid land contracts, and defendant otherwise failed to present sufficient documentary evidence memorializing the existence of a land contract in satisfaction of the statue of frauds. The district court also held that the doctrine of part performance did not preclude the application of the statute of frauds in this case because (1) defendant's payments, which averaged "approximately $1,055 monthly" over the 75 months of occupancy, did not "constitute a fraud that would trigger removal of any sale of property from the statute of frauds

requirements" and (2) the purported land contract could not be performed within one year because it was a multiyear contract. Defendant moved for a new trial, which the district court denied.

Defendant appealed to the circuit court, arguing that the district court erred when it found that there was no written land contract between Holmes and defendant because the great weight of the evidence established that there was. Defendant alternatively argued that, even if there was no written land contract, the district court still erred because it failed to apply the part-performance exception to the statute of frauds. Defendant acknowledged that, in order for that exception to apply, there must be a valid contract between the parties, and contended that the evidence overwhelmingly established that there was. Defendant also explained that the district court was mistaken in its belief that the "one-year limitation of the statute of frauds" applied in this case because it was possible for defendant to complete performance under the land contract within one year.

In response, plaintiff argued that the district court permissibly concluded that the evidence did not establish the existence of a valid, written land contract between Holmes and defendant, and there was no reason to overturn that finding. As for the doctrine of part performance, plaintiff argued that the district court appropriately declined to apply that doctrine because the court concluded that, under the facts of this case, no fraud occurred that should remove this case from the statute of frauds. Plaintiff also disagreed with defendant that the district court erred when it concluded that the purported land contract could not be performed within one year. Plaintiff contended that the contract clearly contemplated a payment schedule covering multiple years, necessarily meaning that the contract could not be performed within one year.

The circuit court eventually entered an opinion and order affirming the district court. First addressing defendant's argument that a valid written land contract existed, the circuit court concluded that the district court's finding that no such contract existed was adequately supported by the evidence submitted at trial. The circuit court likewise held that the district court's finding that defendant had not presented sufficient memoranda or notes to satisfy the statute of frauds was supported by the evidence. The circuit court then turned to defendant's part-performance argument, and held that "[p]art performance does not apply in this case" because defendant "failed to prove the existence of an oral contract by clear and convincing evidence." The circuit court also agreed with the district court that application of the doctrine of part performance was not necessary in this case because it would not be a fraud to allow plaintiff to repudiate the alleged land contract as defendant did not perform his duties under the purported contract for several years before plaintiff filed suit. Lastly, the circuit court declined to address whether the statute of frauds' one-year limitation applied because defendant failed to prove the existence of an express or oral land contract in the first place. This appeal followed.

## II. PART-PERFORMANCE EXCEPTION

On appeal, defendant no longer contends that there exists an enforceable, written land contract. Instead, he only argues that the district court erred in its application of the part-performance exception to the statute of frauds. We agree.

## A. STANDARDS OF REVIEW

We review de novo a circuit court's review of a district court's order. *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). We also review de novo a court's finding about the existence of a contract, *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006), and questions about the applicability of a statute, including the statute of frauds, *Zaher v Miotke*, 300 Mich App 132, 140; 832 NW2d 266 (2013).

## B. ANALYSIS

The statute of frauds has two sections addressing conveyances of interest in land—MCL 566.106 and MCL 566.108. MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 provides in relevant part:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

Critical to defendant's argument on appeal is MCL 566.110, which provides, "Nothing in this chapter contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements." MCL 566.110 is in the same chapter as MCL 566.106 and MCL 566.108. By its plain terms, MCL 566.110 does not require the existence of a *written* contract, which is consistent with the common-law understanding of when partial performance may remove a contract from the scope of the statute of frauds. See, e.g., *Hatch v Wolack*, 316 Mich 258, 261-263; 25 NW2d 191 (1946). To be enforced, however, any such contract "must be established by clear and convincing evidence." *Guzorek v Williams*, 300 Mich 633, 639; 2 NW2d 796 (1942). The doctrine of partial performance "has historically been applied only to contracts involving the sale of land . . . ." *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991) (quotation marks and citation omitted).

As already stated, defendant no longer argues that there was a written land contract that would satisfy the statute of frauds. Rather, defendant now only argues that, even though there is no written contract sufficient to satisfy the statute of frauds, he nevertheless had a valid contract with Holmes to purchase the property, and the statute of frauds does not bar enforcement of that agreement due to defendant's partial performance. Adequately addressing this argument requires consideration of two separate issues: (1) whether there was a valid agreement between Holmes and defendant in which Holmes agreed to sell the property to defendant and (2) whether the statute

of frauds prevents enforcement of any such agreement. While defendant raised and the district court addressed the doctrine of partial performance, it is clear that the district court's consideration of the doctrine was inadequate. Reviewing the district's court's written order, it appears that the district court never addressed the first issue (whether there was a valid agreement between Holmes and defendant in which Holmes agreed to sell the property to defendant), and thus could not properly analyze the second (whether the statute of frauds prevented enforcement of any such agreement).

In its written order, the district court only addressed whether there was a written agreement sufficient to satisfy the statute of frauds. The court first noted, "Neither . . . Exhibits 6 nor 7 constitute valid land contracts." The district court then turned to the receipts produced by defendant for payments he made to Holmes and held that those receipts do not "constitute sufficient memoranda or notes to satisfy the statute of frauds," and explained why. The district court then moved on to addressing whether the doctrine of partial performance applied. This was premature, however, because if Holmes and defendant never had a contract in which Holmes agreed to sell the property to defendant, then there was no agreement for defendant to partially perform.[2] See, e.g., *Halsell v Renfrow*, 202 US 287, 294; 26 S Ct 610; 50 L Ed 1032 (1906) ("As there was no agreement at the last stage, there can have been no part performance then.").

This was problematic because, as defendant stresses on appeal, there was ample evidence that could support the existence of an agreement between Holmes and defendant for the sale of the property, even though there is no enforceable, written agreement. Without the district court's fact-finding on the sufficiency of this evidence, further review by this Court of whether defendant partially performed under this contract is foreclosed.[3] Again, if Holmes never agreed to sell the

---

[2] The circuit court compounded this problem when it addressed the district court's order as though the district court had affirmatively found that no oral contract between the parties existed. As explained, the district court never reached this issue.

[3] The district court's partial-performance analysis is somewhat unclear, and it is possible that the district court proceeded under the belief that there was an agreement between defendant and Holmes for the sale of the property, but nevertheless concluded that it should not be removed from the statute of frauds. The district court stated:

> The doctrine of part performance is inapplicable to the facts of this case because the amount of $76,000 paid by defendant to decedent Holmes considering the 75 months that defendant has occupied the property (averaging approximately $1,055 monthly) does not constitute a fraud that would trigger removal of any sale of property from the statute of frauds requirements.

Assuming that this analysis was done under the assumption that there was an agreement between defendant and Holmes for the sale of the property, it was improper. It is undisputed that defendant paid $76,000 over the course of several years, and it cannot be seriously disputed that, if a contract was agreed to, it was for a total purchase price of $100,000-$106,000. Thus, if a contract did exist, defendant paid roughly 75% of it. The district court seemed to hold that it would not be a "fraud" for defendant to lose any interest in the property because the $76,000 he paid was a fair price for

property to defendant, then there was no agreement for defendant to partially perform. Because the district court never determined whether an agreement between defendant and Holmes for the sale of the property was established by clear and convincing evidence, we must reverse the circuit court's opinion and order, vacate the district court's order, and remand for the district court to address the issue in the first instance. If the district court determines that such an agreement has been established by clear and convincing evidence, it should then address whether defendant's partial performance of that contract should remove it from the statute of frauds.

Briefly, the district court also held that any agreement in this case would fall within MCL 566.132(1)(a), which provides:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

In *Dumas*, our Supreme Court held that the doctrine of partial performance does not remove a contract from this portion of the statute of frauds—"the statute of frauds section concerning contracts not to be performed within a year." *Dumas*, 437 Mich at 541.

While the unsigned land contract(s) stated that the agreement would not be completed for several years, that is not the operative question. Rather, the question is whether there is *any possibility* that the contract could be completed within a year. If so, the statute of frauds is not applicable, even if it is clear that the parties intended, or thought it likely, that the contract would not be fully performed within a year. See *Hill v Gen Motors Acceptance Corp*, 207 Mich App 504, 509-510; 525 NW2d 905 (1994) (holding that a five-year lease was outside the scope of the statute of frauds because the lessee could have exercised the option to purchase the car within the first year of the lease). Assuming that a land contract between defendant and Holmes exists, it cannot be seriously disputed that it was *possible* to perform within a year because, at any time in the first year, defendant could have paid the full purchase price and obtained title to the property. Absent additional fact-finding by the district court establishing that there was no possibility for the contract (assuming one exists) to be performed within a year, MCL 566.132(1)(a) is not applicable.

## III. CONCLUSION

For the reasons explained in this opinion, we reverse the circuit court's opinion and order affirming the district court's order, vacate the district court's order, and remand this case to the district court for further proceedings. The district court shall address whether defendant

---

rent. But, obviously, there is a major difference between paying rent (where one has no expectation of owning the property in the future) and making payments on a land contract (where the purpose of making payments is to eventually own the property). Without addressing those differences, the district court's analysis was, at a minimum, incomplete.

established, by clear and convincing evidence, the existence of a land contract between Holmes and defendant in which Holmes agreed to sell the property to defendant. If the district court finds that such a contract has been established, the court must then address whether defendant partially performed under the contract, and whether that partial performance was sufficient to remove the agreement from the scope of the statute of frauds.

Reversed and remanded. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey