*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WOOD, KULL, HERSCHFUS, OBEE & KULL, PC, and ESTATE OF RAYETTA HERSCHFUS,

UNPUBLISHED
March 21, 2024

Plaintiffs-Appellants/Cross-Appellees,

v

No. 359742
Oakland Circuit Court
LC No. 2019-174722-CB

KNIGHTSBRIDGE CHARITIES, INC.,

Defendant-Appellee/Cross-Appellant.

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Plaintiffs, Wood, Kull, Herschfus, Obee & Kull, P.C. (Wood Kull) and the Estate of Rayetta Herschfus (the estate), appeal as of right an order denying the estate's motion for attorney fees and costs. The trial court entered the order following a trial where the jury found defendant Knightsbridge Charities, Inc. liable for common-law conversion, statutory conversion, and trespass to chattels. The jury awarded the estate $1,000 in damages. The appeal and cross appeal raise numerous issues regarding the jury trial and pretrial motions. We conclude that the trial court erred by granting summary disposition of Wood Kull's claims against defendant on statute-of-frauds grounds and, therefore, reverse the order concerning defendant's dispositive motion with respect to those claims. We are unpersuaded that the remaining claims asserted by plaintiffs or by defendant on cross-appeal warrant appellate relief.

## I. BACKGROUND

This case arises out of a tangle of disputes between Brian Herschfus, who is both a principal of Wood Kull and personal representative of the estate, and Jack Ginsburg, the now deceased owner and operator of defendant. Defendant is a nonprofit charity that distributed money to charities of a donor's choice after receiving and reselling donated clothing, furniture, and other goods. To that end, defendant owned a building where it stored the goods. Defendant's founder and president, Jack Ginsburg, primarily (if not exclusively) operated defendant until his health declined. Jack died in 2015, and his daughter, Rhonda Ginsburg, began to handle his affairs and defendant's affairs, despite questions about her authority to do so. Wood Kull is a law firm, and

-1-

as one of its attorneys, Brian represented defendant and Jack in several legal matters over the years, and the two became close friends outside of their professional relationship.

According to plaintiffs' complaint, Jack asked Brian to await payment for the legal fees incurred for these services until defendant's building sold. Unrelated to the outstanding legal fees, Jack also allowed Brian to store personal property belonging to the estate in defendant's building. The property originally belonged to Brian's mother, the decedent. When defendant's building was sold in 2019, Wood Kull's legal fees remained unpaid and the contents of the building—including the estate's property—were either donated to Salvation Army or otherwise disposed of without Brian's knowledge. A few months later, plaintiffs sued defendant to recover the outstanding legal fees and damages for the loss of the estate's property. Defendant, in turn, filed a counterclaim for the reasonable rental value of the space previously occupied by the estate's property.

The trial court granted summary disposition of defendant's counterclaim for failure to state a claim upon which relief could be granted. But it did not explicitly address plaintiffs' "standing" argument, which asserted that Rhonda lacked authority to act on defendant's behalf. The trial court also granted summary disposition of Wood Kull's claims on the basis that they were barred by the statute of frauds, MCL 566.132(1)(a) (agreements not to be performed within one year) and (b) (special promise to pay debt of another), but held that genuine issues of material fact remained regarding the estate's conversion claims.[1]

The estate's tort claims went to jury trial. In pertinent part, Brian testified regarding the events that led him to store the estate's property in defendant's building, described the items that were stored there, and offered opinions regarding the values of the items for which the estate sought compensation, totaling approximately $51,000. Brian's valuation testimony was based, at least in part, on research he did on the internet about the value of similar items. Rhonda testified that she took over defendant's affairs after her father died because there was no one else to do it. This included filing documents on defendant's behalf. But the charity was no longer operating, and she had to sell the building because it was in poor condition and she could not afford the repairs. Rhonda maintained that there were ongoing problems with roof leaks that affected the entire building and caused substantial damage to its contents. She also explained that the building was often without electricity and, thus, without heat or air conditioning. Rhonda asserted that she donated three truckloads of goods to Salvation Army to prepare the building for sale, but Salvation Army would not accept some of the items because they were moldy, water-damaged, or unsalvageable. Brian disputed Rhonda's characterization of the building, testifying that he did not see any damage, mold, or significant roof leaks when he visited the building in 2013 and 2014. He also explained that, despite Rhonda's testimony to the contrary, the city of Southfield did not formally condemn the building because Brian successfully defended against the city's multicount complaint on constitutional grounds. During the trial, defense counsel was disruptive, disrespectful, and failed to follow court orders. The jury found defendant liable for common-law conversion, statutory conversion, and trespass to chattels, but awarded only $1,000 in damages.

---

[1] The trial court also declined to dismiss the estate's trespass-to-chattels count because defendant failed to present any argument or authority regarding that claim.

-2-

Both defendant and the estate moved for postjudgment relief on the basis of various trial errors, and the estate filed a separate motion for attorney fees, costs, and treble damages pursuant to MCL 600.2919a(1). The trial court denied each motion. Plaintiffs' appeal and defendant's cross appeal followed.

## II. PLAINTIFFS' CLAIMS OF ERROR

## A. STANDING

Plaintiffs first argue that judicial estoppel required the trial court to conclude that defendant, acting through Rhonda, lacked standing to defend against plaintiffs' claims. We disagree.[2] These arguments are rooted in the contention that Rhonda lacked any authority to act on defendant's behalf, but the argument fails for three reasons.

First plaintiffs' argument misreads the standing requirement. Standing refers to "the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 583; 983 NW2d 798 (2022) (quotation marks and citation omitted). Here, plaintiffs are challenging defendant's right to *defend* against their claims, not its ability to assert a claim, so the question of standing is inapplicable.

Second, even if standing extended to a litigant's right to defend against a claim, plaintiffs' judicial estoppel theory lacks merit because it is not clear that the court granted summary disposition on plaintiffs' theory of standing. Plaintiffs argue that in granting the estate's motion for summary disposition of defendant's counterclaim, the trial court ruled that defendant lacked standing to bring its counterclaim against the estate. Plaintiffs argue, under the doctrine of judicial estoppel, the trial court was obligated to conclude that defendant lacked standing to defend against plaintiffs' claims. This argument misrepresents the record and, again, misconstrues the legal principle upon which it relies.

The estate's dispositive motion asserted three arguments in support of summary disposition: (1) that Rhonda lacked standing to act on behalf of defendant; (2) that defendant could not pursue a counterclaim for rent when the storage agreement was made between Brian and Jack and Rhonda denied any knowledge of the estate's property being stored in defendant's building; and (3) the counterclaim was untimely. The trial court granted the estate's motion under MCR 2.116(C)(8) "for failing to state a claim upon which relief can be granted." It is impossible to tell from the trial court's sparse explanation which argument or arguments it agreed with, and we will not simply presume the trial court adopted the reasoning favored by plaintiffs on appeal.

If anything, assuming the trial court decided the motion under the correct subrule, its reference to MCR 2.116(C)(8) weighs against accepting plaintiffs' interpretation of the record. While a motion challenging standing can be made under MCR 2.116(C)(8) or (10), *Pontiac Police*

---

[2] "Whether a party has standing is a question of law reviewed de novo." *Murphy v Inman*, 509 Mich 132, 143; 983 NW2d 354 (2022). Application of an equitable doctrine like judicial estoppel is reviewed de novo. *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012).

*& Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 620-621; 873 NW2d 783 (2015), the estate cited a plethora of evidence beyond the pleadings in support of its standing argument.[3] When evidence outside the pleadings is proffered in support of a dispositive motion brought under both subrules, the motion should be decided under MCR 2.116(C)(10). *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017).

Finally, even if this Court accepted that the trial court granted summary disposition on the basis of defendant's lack of standing, plaintiffs' claim of error would still lack merit because it misconstrues the doctrine of judicial estoppel. In order to protect the integrity of the judicial process, "[j]udicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Ford Motor Co v Pub Serv Comm*, 221 Mich App 370, 382; 562 NW2d 224 (1997). But the doctrine only applies when the party's earlier position is "wholly inconsistent" with its later asserted position. *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014) (quotation marks and citation omitted).

Plaintiffs argue that because the trial court ruled that defendant lacked standing to assert the counterclaim for rent, that ruling should be extended under the doctrine of judicial estoppel to preclude defendant from presenting a defense to plaintiffs' claims. But the doctrine only bars a litigant from asserting a position wholly inconsistent with a position previously asserted by the litigant in the same or related litigation. *Id*. In other words, judicial estoppel focuses on the litigant's position throughout the pertinent proceedings—not the trial court's rulings. Defendant did not respond to the estate's dispositive motion, and the matter was decided without oral argument, thereby foreclosing the opportunity for defendant to assert *any* position on the question of its standing. Because defendant did not take a position regarding any of the issues in the dispositive motion, judicial estoppel does not operate to bar defendant from litigating its liability for the claims at issue in this case.

## B. NONPROFIT CORPORATE DISSOLUTION

Next, plaintiffs direct this Court's attention to portions of the Dissolution of Charitable Purpose Corporations Act, MCL 450.251 *et seq*., and the Nonprofit Corporations Act, MCL 450.2101 *et seq*., under which plaintiffs seem to argue that the trial court should have ordered defendant to be dissolved. We disagree.[4] Plaintiffs contend that defendant lacked any duly

---

[3] The estate's second argument in support of summary disposition contained a single citation to Rhonda's deposition testimony, and was not couched in terms of challenging the legal sufficiency of defendant's pleading. The estate's last theory regarding the timeliness of the counterclaim, which was appended to defendant's answer to plaintiffs' amended complaint, is most implicated by the court's reference to MCR 2.116(C)(8) in that it could be decided solely on the pleadings. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (noting that a motion under MCR 2.116(C)(8) must be decided on the pleadings alone).

[4] "Questions of statutory interpretation are reviewed de novo." *Miller v Allstate Ins Co*, 481 Mich 601, 606; 751 NW2d 463 (2008). "The primary rule of statutory construction is to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, it is generally

appointed directors or officers after Jack's death, Rhonda was never properly appointed as a director or officer, and that these facts effectively resulted in dissolution of the nonprofit corporation and escheat of its assets to the attorney general by operation of law. While we recognize plaintiffs' point that defendant may not have been operating in accordance with its governing documents and controlling law, none of the authorities plaintiffs cites demonstrate that the trial court could or should have dissolved defendant in the context of this case.

Plaintiffs first cite the introductory language to the Dissolution of Charitable Purposes Act, which describes the object of the act as follows:

> An act to require notice and accounting to the attorney general of the dissolution, merger, or conversion of, and certain amendments to or restatements of the articles of incorporation of, certain domestic charitable purpose corporations or other entities; to require court proceedings for dissolution of those domestic charitable purpose corporations or entities; and to require the filing of a notice of intention to withdraw with the attorney general by a foreign charitable purpose corporation that withdraws from this state. [1965 PA 169, title, as amended by 2014 PA 558.]

The title language of an act, however, is not authoritative law. *O'Connor v Michigan*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360002); slip op at 5. Courts may look to the title language to "extend the meaning of an ambiguous statute," but only when doing so is consistent with general principles of statutory interpretation. *Id*. at ___; slip op at 5 (quotation marks and citation omitted). The title cannot, on its own, support plaintiffs' contention that defendant's dissolution was proper or necessary.

Next, plaintiffs cite the following portion of MCL 450.251:

> (1) A nonprofit corporation . . . shall not do any of the following unless it complies with subsection (2):
>
> * * *
>
> (d) Dissolve.
>
> (2) A corporation or entity described in subsection (1) must give written notice to the attorney general before filing an amendment to or restatement of its articles of incorporation, a certificate of conversion, or any other paper or document concerning a merger, conversion, or dissolution described in subsection (1) with any other state agency or court. [MCL 450.251(1)(d) and (2).]

Notably, neither of these provisions call for dissolution as a matter of law. Rather, they merely require the nonprofit corporation to give advance notice to the attorney general before filing

---

applied as written." *Grady v Wambach*, 339 Mich App 325, 329; 984 NW2d 463 (2021) (quotation marks and citation omitted).

dissolution documents. There is no evidence about whether defendant provided such notice, which undercuts plaintiffs' contention that dissolution was proper.

Plaintiffs next rely on § 301 of the Nonprofit Corporations Act, which states:

> (4) A corporation shall not pay dividends or make distributions of any part of its assets, income, or profit to its shareholders or members, except as follows:
>
> * * *
>
> (b) If a corporation dissolves, the corporation may make distributions of assets, other than assets held for charitable purposes, to shareholders or members as permitted under this act and the corporation may distribute assets held for charitable purposes to 1 or more member or shareholder domestic corporations, foreign corporations, trusts, or similar entities that are organized and operated exclusively for charitable purposes that are not inconsistent with the charitable purposes for which the corporation holds the assets. [MCL 450.2301(4)(b).]

The first clause of subdivision (b) presupposes dissolution. It cannot serve as authority for a third party to force dissolution or for finding dissolution occurred by operation of law.

Plaintiffs' reliance on MCL 450.2855 suffers from the same flaw. Section 855 of the Nonprofit Corporations Act discusses payment of debts, obligations, and liabilities, as well as distribution of remaining assets. But subsection (1) begins by stating that its subdivisions apply "if a corporation is dissolved." MCL 450.2855(1). Subsection (2) likewise states, "If any assets of a dissolved corporation are not subject to any provision for the distribution of assets described in subsection (1), those remaining escheat to the state." MCL 450.2855(2). Absent evidence of dissolution, MCL 450.2855 has no relevance to the issues at hand. None of the Michigan law plaintiffs cite would have allowed the trial court to conclude that defendant had been or should be dissolved, or allowed plaintiffs to raise this claim.

Plaintiffs' citation of federal law is even less persuasive. They rely on 26 USC 507(a)(1), which requires a private foundation to notify the Secretary of the Treasury of its intent to terminate its status as such, and a publication promulgated by the Internal Revenue Service (IRS) regarding which of several available forms should be filed as notice that a tax-exempt organization is ending its operations. Again, these sources concern actions that a nonprofit must take when it dissolves, but they do not support forced dissolution. Inasmuch as plaintiffs have not cited any legal authority that actually supports their claim of error, there is no basis for this Court to grant appellate relief.

C. SUMMARY DISPOSITION OF WOOD KULL'S CLAIMS

We now turn to plaintiffs' argument that the trial court erred by granting summary disposition of Wood Kull's claims. We agree that the trial court erred by granting summary disposition on the basis of the statute of frauds because the agreement for payment of attorney fees

was capable of being performed within one year and there were questions of fact as to whether the agreement involved a collateral promise to answer for the debt of another.[5]

At the outset, the trial court correctly concluded that Wood Kull's claims were not time barred. Regarding this issue, defendant argued below that Wood Kull had no right to seek payment for services that were "over 10 years old" because, without a writing to the contrary, MCL 600.5807(8) barred those claims. Wood Kull responded that the statute cited by defendant was inapplicable in this case, and the trial court agreed. MCL 600.5807(8) states:

> The period of limitations is 10 years for an action on a bond, note, or other like instrument that is the direct or indirect obligation of, or was issued by although not the obligation of, this state or a county, city, village, township, school district, special assessment district, or other public or quasi-public corporation in this state.

This action does not involve a bond, note, or similar instrument creating an obligation. And it does not involve an instrument issued by an entities enumerated in MCL 600.5807(8). That statute of limitations is not implicated in this case. The trial court correctly denied summary disposition on statute-of-limitations grounds.

The trial court, instead, granted summary disposition because it determined that Wood Kull's claims were barred under MCL 566.132(1)(a) and (b).[6] This was incorrect. In pertinent part, MCL 566.132 provides:

---

[5] A trial court's summary disposition ruling is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Although defendant moved for summary disposition under MCR 2.116(C)(8) and (10), the trial court correctly recognized that a dispositive motion premised on the statute of frauds or statute of limitations is governed by MCR 2.116(C)(7). In reviewing a motion under that subrule, "all well-pleaded allegations must be both accepted as true and construed in the light most favorable to the nonmoving party." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 335-336; 941 NW2d 685 (2019). "Although generally not required to do so, a party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013) (citations omitted). "If there is no factual dispute, whether a plaintiff's claim is barred . . . is a matter of law for the court to determine." *Id*. at 523. If a question of fact remains, summary disposition should not be granted. *Id*.

[6] Plaintiffs argue that defendant again cited the wrong statute in its motion, presumably because defendant referred to "MCL 566.132, Sec. 2" and "MCL 566.132 (Section 2)." These citations of "section 2" refer to MCL 566.132 as a whole, as that statute is § 2 of the relevant act, MCL 566.131 *et seq*. Defendant quoted MCL 566.132(1)(a) and (b) in full in its motion, and did not specifically cite, quote, or otherwise reference *subsection* (2), MCL 566.132(2), which concerns actions against financial institutions. The trial court did not err by analyzing defendant's motion under the portions of the statute quoted therein.

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.
>
> (b) A special promise to answer for the debt, default, or misdoings of another person. [MCL 566.132(1)(a) and (b).]

The trial court's only explanation for concluding that Wood Kull's claims were barred by the statute of frauds was that the text of MCL 566.132(1)(a) and (b) is "clear and unambiguous."

The essence of the statute of frauds is the requirement that agreements falling within its scope be in writing before they can be enforced. See *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548; 619 NW2d 66 (2000). Concerning the first category of agreements governed by the statute of frauds—"[a]n agreement that, by its terms, is not to be performed within 1 year from the making of the agreement," MCL 566.132(1)(a)—this Court has construed the statutory language as applying only to agreements that cannot under any circumstances be performed within one year. *Hill v Gen Motors Acceptance Corp*, 207 Mich App 504, 509-510; 525 NW2d 905 (1994). "[I]f there is *any possibility* that an oral contract is capable of being completed within a year, it is not within the statute of frauds . . . ." *Id*. at 509 (quotation marks and citation omitted; alteration in original). This is so even when the parties "intended and thought it probable that it would extend over a longer period and even though it does so extend." *Id*. at 509-510 (quotation marks and citation omitted).

According to plaintiffs' amended complaint, defendant agreed to pay for the services rendered by Wood Kull, though Jack asked Wood Kull to wait for payment until defendant sold its building. Brian acknowledged that Wood Kull did not have any written fee agreements with defendant. Although Brian believed the understanding that Wood Kull would be paid upon sale of the building had been memorialized in a letter, Wood Kull was unable to produce the letter. Nonetheless, the building *could* have been sold within one year and defendant *could* have paid Wood Kull from the proceeds or some other source of funds within the same time. Because there is some possibility that the oral agreements could have been completed within one year, MCL 566.132(1)(a) did not bar Wood Kull's claims. *Hill*, 207 Mich App at 509-510. The trial court erred by concluding otherwise.

The trial court also held that Wood Kull's claims were barred by MCL 566.132(1)(b), which requires a writing to enforce "[a] special promise to answer for the debt, default, or misdoings of another person." This was also incorrect. This provision applies only to collateral promises to pay for a debt already in existence. *Highland Park v Grant-Mackenzie Co*, 366 Mich 430, 443; 115 NW2d 270 (1962). On the other hand, an original promise to pay for services rendered to another in the future is not governed by MCL 566.132(1)(b). *Schier, Deneweth & Parfitt, PC v Bennett*, 206 Mich App 281, 282-283; 520 NW2d 705 (1994).

Plaintiffs dismiss the trial court's reliance on MCL 566.132(1)(b) as clearly erroneous because there were "no allegations of any[]one promising to answer for the debt, default, or misdoings of another . . . ." We disagree with plaintiffs' treatment of this issue, as plaintiffs' complaint expressly alleged that Wood Kull represented both defendant *and* Jack with respect to the Southfield charges. And in identifying the four other legal matters for which Wood Kull sought attorney fees, two of the cases were titled against individuals—Jack and "Jacob Ginsburg,"[7] thereby supporting an inference that these were personal matters. Brian however testified that he thought both of those cases involved building violations for which defendant was ultimately responsible, noting that he had no control over who the city chose to name as defendant. On the record before the trial court at the time of its ruling, there was a question of fact regarding whether some portion of the fees sought by Wood Kull involved a promise to pay for the debt of another. Defendant's argument that Jack lacked authority to oblige defendant to pay his legal fees is without merit. Defendant's bylaws authorized Jack, as its president, to manage defendant's affairs and execute contracts in defendant's name. The bylaws also permit defendant to indemnify its officers against expenses, including attorney fees, incurred in actions arising from the officer's actions on behalf of defendant.

Additionally, assuming any portion of the fees at issue were incurred in representing Jack personally, neither plaintiffs nor defendant offered any evidence regarding when the agreement was made in relation to the services rendered. To the extent defendant agreed to pay the fees arising from Jack's representation from the outset, before the fees were incurred, such an agreement would not be subject to the statute of frauds. *Id*. Given the uncertain factual record regarding this issue and the unanswered question of to whom Wood Kull provided services in each matter, the trial court erred by holding that MCL 566.132(1)(b) barred Wood Kull's claims as a matter of law.

We are not persuaded by defendant's alternative argument on appeal that we should affirm the trial court's ruling on the basis that the contract was unenforceable for violating MRPC 1.8(a).[8]

MRPC 1.8(a) provides:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:

---

[7] It is unclear from the record who Jacob Ginsburg is.

[8] Defendant presents several alternative arguments on appeal for affirming the trial court's ruling, but the only argument it raised before the trial court was regarding the enforceability of the agreements under MRPC 1.8(a). Because defendant's remaining arguments were not raised below, we decline to address them for the first time on appeal. *Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006) ("Although an appellee need not file a cross-appeal to argue alternative reasons to support a judgment, to properly preserve a claim for appeal, the reasons must have been presented to the lower court.") (citations omitted).

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

The trial court opined that defendant's reliance on MRPC 1.8 was misplaced because the professional rules of conduct cannot be used "as a sword or shield in a civil cause of action." We disagree. MRPC 1.0(b) explains that failure to comply with the rules "is a basis for invoking the disciplinary process," but does not "give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule." This provision does not, however, preclude a litigant from *defending* against a civil action on the basis of noncompliance with the Michigan Rules of Professional Conduct. See *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 193-197; 650 NW2d 364 (2002) (reasoning that contracts violating codified ethical rules are unenforceable as contrary to public policy).

Nonetheless, MRPC 1.8(a) is irrelevant to the claims brought by Wood Kull. MRPC 1.8(a) governs business transactions and acquisition or "an ownership, possessory, security, or other pecuniary interest adverse to a client." Defendant opines that MRPC 1.8(a) is implicated by the fee agreement because Wood Kull acquired an interest in defendant's building, but there is no indication that the agreement involved a security interest adverse to defendant. Rather, Wood Kull simply agreed to await payment until defendant sold its building. This is more akin to a condition precedent to the payment of fees than a security interest. See *Yeo v State Farm Ins Co*, 219 Mich App 254, 257; 555 NW2d 893 (1996) ("A 'condition precedent' is a fact or event that the parties intend must take place before there is a right to performance."). As it relates to MRPC 1.8(a), the trial court reached the correct result, albeit for the wrong reason. In sum, the trial court erred in granting summary disposition of Wood Kull's claims.

## D. AFFIRMATIVE DEFENSES

Next, plaintiffs argue that the estate is entitled to a new trial because the trial court allowed defendant to present several affirmative defenses that it failed to raise timely. We disagree.[9] At the heart of this issue is whether certain of defendant's trial arguments constituted affirmative defenses that had to be raised in defendant's first responsive pleading or dispositive motion. See

---

[9] A trial court's ruling regarding a motion for a new trial is reviewed for an abuse of discretion, but any corresponding questions of law are reviewed de novo. *Dorsey v Surgical Institute of Mich, LLC*, 338 Mich App 199, 223; 979 NW2d 681 (2021). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Id*. (quotation marks and citation omitted). This Court reviews de novo whether a defense constitutes an affirmative defense. *Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 241; 635 NW2d 379 (2001).

-10-

*Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 241; 635 NW2d 379 (2001) ("An affirmative defense must be stated in a party's responsive pleading or in a motion for summary disposition made before the filing of a responsive pleading, or the defense is waived."). More specifically, plaintiffs challenge defendant's questioning and arguments regarding the roof leaks that purportedly damaged the estate's property, whether the estate donated its property to defendant, and whether the property was included in the estate's probate schedules.[10]

Every theory advanced by a defendant to avoid liability is not an "affirmative defense." Rather, "[a]n affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff." *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 9; 614 NW2d 169 (2000) (quotation marks and citation omitted). "In other words, it is a matter that accepts the plaintiff's allegations as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Id*. (quotation marks and citation omitted). For example, expiration of the statute of limitations is an affirmative defense because, even if the plaintiff is able to establish a prima facie case, the defendant may avoid liability by establishing that the suit was untimely. *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993).

Plaintiffs first challenge defendant's right to explore the deteriorating condition of the building and, more specifically, the leaking roof that purportedly rendered the estate's property worthless well before it was disposed of. This was not an affirmative defense, but rather an attack on damages. The plaintiff in a civil action bears the burden of proving its damages by a preponderance of the evidence. *Hannay v Dep't of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014); *Jackson v Bulk AG Innovations, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356935); slip op at 1. Defendant's arguments regarding the condition of the building and its effect on the estate's property rebutted the damages element of the estate's prima facie case. It was not an affirmative defense that defendant could waive by failure to raise it in a first responsive pleading or motion.

Plaintiffs next challenge defendant's suggestion at trial that the estate donated the subject property to defendant. This was not an affirmative defense because it related directly to an element of conversion. Common-law conversion is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

---

[10] Plaintiffs' discussion of this issue merely states the legal standards and concludes that defendant's failure to raise its defense theories in its affirmative defenses constituted waiver. But Plaintiffs have not undertaken any effort to explain or offer support for their assumption that the defenses at issue are, in fact, affirmative defenses to which the waiver rule would apply. As this Court has previously stated, "[a]n appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority." *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Failure to properly brief an issue constitutes abandonment on appeal. *Id*. Even if plaintiffs had not abandoned review of this issue, it lacks merit.

-11-

*Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015) (*Aroma Wines II*) (quotation marks and citation omitted). Statutory conversion under MCL 600.2919a involves the same concept of conversion, with the added element that property was converted to the defendant's "own use." *Id*. at 354-357. If the estate donated its property to defendant, it no longer had an interest in the property that defendant could interfere with, and any act of dominion by defendant would not be "wrongful." Defendant's donation theory rebutted the estate's prima facie case regarding both conversion counts and was, therefore, not an affirmative defense that could be waived by failure to raise it in a first responsive pleading.

Finally, plaintiffs challenge defendant's questions and arguments regarding whether the subject property was included in the estate's probate schedules. The exclusion of the property on the schedules was presented as evidence supporting a finding that the property had been donated. As noted above, whether the property was donated went directly to whether the estate established a prima facie case of common-law and statutory conversion. This argument did not involve an affirmative defense, and defendant did not waive the argument by failing to raise it in a first responsive pleading or motion. In sum, defendant did not advance any waived affirmative defenses at trial, and the trial court did not abuse its discretion by denying the estate's motion for a new trial on that basis.

## E. ATTORNEY MISCONDUCT AT TRIAL

Next, plaintiffs argue that the trial court should have granted a new trial on the basis of misconduct by defendant's lead trial counsel. We acknowledge that defense counsel engaged in inappropriate and disrespectful behavior, misrepresented Brian's testimony, and may have encouraged the jury to reach a factual inference at odds with the law. But we are not persuaded that the trial court abused its discretion when it denied plaintiffs' motion for a new trial because the misconduct did not materially affect the estate's substantial rights.[11]

MCR 2.611(A)(1) identifies grounds for granting a new trial whenever a party's substantial rights are materially affected, including "[a] ground listed in MCR 2.612 warranting a new trial." MCR 2.611(A)(1)(h). MCR 2.612 allows a court to relieve a party from a final judgment on various grounds, including "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." MCR 2.612(C)(1)(c). Plaintiffs' complaints can be divided into four broad categories: (1) defense counsel's argumentative and disrespectful comments and demeanor; (2) defense counsel's failure to comply with the trial court's instructions regarding use of proposed exhibits; and (3) defense counsel's references to "manufactured" facts.[12] In reviewing a claim of error premised on an attorney's conduct at trial, this Court must first consider whether the conduct

---

[11] A trial court's ruling regarding a motion for a new trial is reviewed for an abuse of discretion, but any corresponding questions of law are reviewed de novo. *Dorsey*, 338 Mich App at 223. "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Id*. (quotation marks and citation omitted)

[12] Plaintiffs also claimed that defense counsel improperly advanced waived affirmative defenses. But the challenged arguments did not involve affirmative defenses for the reasons outlined in Section II.D., so we need not discuss that point further

-12-

was erroneous and, if so, whether it was harmless. *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 290; 602 NW2d 854 (1999).

Regarding defense counsel's comments and demeanor, we are unable to determine based on the written record whether defense counsel made faces, exhaled loudly, or engaged in other nonverbal disrespectful behavior, and plaintiffs have not identified specific examples distinct from the other categories noted above. But we acknowledge that the record is riddled with examples of defense counsel's combative attitude, primarily directed toward Brian and, at times, the trial court. Nonetheless, we will not address this theory in depth because plaintiffs failed to provide record citations for most of their complaints. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004) ("We will not search the record for factual support for plaintiffs' claims."); MCR 7.212(C)(7) (requiring factual assertions in appellate brief be "supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court").

As a representative example of impertinent comments, defense counsel objected to admission of the purchase agreement for the building, and the trial court apparently agreed with the objection. The estate then began to ask Rhonda whether she signed the deed from the sale, prompting the following exchange:

> [*Defense Counsel*]: Ob—objection, relevance. What's the difference who signed a deed?
>
> *The Court*: Well, it really doesn't have a—
>
> [*Plaintiff's Counsel*]: I'm trying to lay a foundation.
>
> [*Defense Counsel*]: No. It—it—it—
>
> *The Court*: [Defense counsel], you've made your objection.
>
> [*Defense Counsel*]: There's nothing in the Complaint about the building. There's nothing in the Complaint about Rhonda Ginsburg. She's not a party to this case. She's never been sued. What is this information for?
>
> *The Court*: Well, she is the representative.
>
> [*Defense Counsel*]: So.
>
> *The Court*: I beg your pardon?
>
> [*Defense Counsel*]: But yes, she's—she's the representative.
>
> *The Court*: Okay, okay. Well then, she has to testify as to what her knowledge was as the representative of Knightsbridge—Knightsbridge Charities with respect to the property of Knightsbridge Charities. Okay? She's a representative. She's not being sued personally, you're correct. All right?

-13-

[*Defense Counsel*]: Okay. Whatever.

While we agree that defense counsel's attitude was inappropriate, "[a]n attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial." *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). Defense counsel's disrespect does not reflect a deliberate attempt to prevent a fair trial because it was more likely to cast defense counsel himself, and defendant by extension, in a negative light, rather than cause prejudice to the estate.

Regarding defense counsel's behavior with respect to proposed exhibits, defense counsel contravened the trial court's order not to prematurely refence enlargements of Brian's deposition transcript. When defense counsel began his cross-examination of Brian, he brought an easel with a flip chart containing blowups from of Brian's deposition transcript, exhibits from the deposition, and Brian's responses to interrogatories. The trial court cautioned that he was not to show the jury anything without the court's approval. It also reminded defense counsel of the proper manner for introducing such exhibits, namely, asking Brian the questions first, and only resorting to the earlier statements if his trial testimony differed. Despite this preemptive instruction from the trial court, defense counsel repeatedly referenced the enlarged documents and placed them in a location visible to the jury, forcing the trial court to continuously instruct defense counsel to cover the proposed exhibits, some of which apparently included handwritten notes and other markings.

Plaintiffs contend that the trial court's interventions came too late, as the jury had already seen many of the handwritten notes that were inflammatory toward Brian. But the record does not support that assertion, as the content of the notes was never detailed, nor have the allegedly inflammatory remarks been incorporated in the record by other means. Moreover, the trial court's repeated admonishments towards defense counsel made it clear to the jury that his methods were improper, again placing defense counsel, rather than the estate, in a negative light.

Plaintiffs also argue defense counsel "manufactured" facts and arguments at trial. First, defense counsel questioned Brian about a picture that purportedly depicted the estate's piano within defendant's building, but Brian indicated that the piano in the photograph did not belong to the estate. Defense counsel asked Brian if he recalled testifying on the first day of trial that the Steinway piano was visible in the photograph, and Brian answered, "Not only do I not remember, each and every juror will remember that there was no testimony as to that picture and this being my family, ever, no testimony, not from your client and not from me, ever." Still, defense counsel continued with his misconception, prompting Brian to respond defensively and multiple admonishments by the trial court. Defense counsel's questioning admittedly mischaracterized Brian's previous testimony, but Brian made the misrepresentation clear to the jury, and even the trial court stated that they were apparently discussing different exhibits and that the photograph defense counsel was referencing was introduced merely to show what the building looked like in 2014. The jury was well-equipped as factfinder to determine who was accurately portraying the record.

Plaintiffs also contend that defense counsel improperly argued that there were leaks all over the roof despite lack of photographic evidence. This argument is largely premised on plaintiffs' belief that any argument regarding the condition of the building and its effect on the estate's property was an untimely raised affirmative defense. As explained, that aspect of the

defense theory was not an affirmative defense, so failure to raise it in defendant's first responsive pleading did not require exclusion at trial. Moreover, defense counsel did not create this theory out of whole cloth—regardless of whether the leaks were apparent in photographs at trial,[13] Rhonda testified at length about the deteriorating condition of the building, the leaking roof, and the need to remove water from the floor after each rainfall. Although she could not say whether the estate's property, in particular, was damaged, it was reasonable to argue that the jury should infer as much if the property remained in a poorly maintained building for any significant length of time.

Finally, plaintiffs maintain that defense counsel "made up issues relating to listing property on the Estate Probate Schedules." Defense counsel questioned Brian about his actions as personal representative in the estate's probate case, and Brian agreed that he filed an original and amended inventory. The inventories did not include the personal property at issue in the estate's claims against defendant. Brian explained that it was unnecessary to include those items because the property was exempt from the probate case. In closing arguments, defense counsel reasoned that the property was excluded from the probate inventory because it was actually donated to defendant. Again, defense counsel's arguments regarding the implications of the probate forms was not an affirmative defense. Plaintiffs maintain that the estate was prejudiced because it did not have an opportunity to retain a probate expert. This position is unpersuasive in light of Brian's ready explanation for his actions.

On the other hand, we note that if Brian's explanation was correct, it would be improper for defense counsel to urge the jury to view the inventory forms as evidence of a donation. Cf. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 104-105; 330 NW2d 638 (1982) (finding attorney argument regarding right to worker's compensation benefits improper, in part, because it was legally inaccurate). But assuming, without deciding, that the property was exempt from the probate estate, there is no reason to believe that defense counsel's argument prejudiced the estate. The probate forms were cited as evidence of a donation, but the jury's verdict demonstrates that it did not credit defense counsel's donation theory. Consequently, to the extent the argument was legally inaccurate, the improper argument did not affect the estate's substantial rights. The trial court did not abuse its discretion by denying the estate's motion for a new trial on the basis of defense counsel's conduct at trial.

## F. FINAL JURY INSTRUCTIONS

Plaintiffs next argue that the trial court erred by denying their motion for a new trial after refusing to approve final jury instructions until after closing arguments. We agree that the trial court erred, but we find no resulting prejudice warranting reversal.[14]

---

[13] Rhonda's description of various photographs suggest that some *did* reflect water damage and tarps covering the leaking portions of the roof, though she acknowledged that others did not clearly reflect the problem.

[14] We review a trial court's ruling regarding a motion for a new trial for an abuse of discretion, but we review de novo any corresponding questions of law. *Dorsey*, 338 Mich App at 223. "An abuse

MCR 2.513(N)(1), in pertinent part, states:

> Before closing arguments, the court must give the parties a reasonable opportunity to submit written requests for jury instructions. Each party must serve a copy of the written requests on all other parties. *The court must inform the parties of its proposed action on the requests before their closing arguments*. [Emphasis added.]

The court rules impose this obligation on the trial court because a clear understanding of the manner in which the jury will be instructed is critical to counsel's ability to "tailor arguments to the proper legal standards." *People v Clark*, 453 Mich 572, 584, 589; 556 NW2d 820 (1996) (analyzing identical language in predecessor court rule). When a trial court disregards its obligations under MCR 2.513(N)(1), reversal is required only if the error was prejudicial. *Id*. at 587.

The parties presented their closing arguments in this case without the benefit of knowing the law on which the jury would be instructed. The estate's closing argument focused, in part, on Brian's testimony regarding the compensation he sought for various items stored in defendant's building. The estate argued that Brian reasonably requested compensation only for items that he could fairly assess the value of and reminded the jury that Brian selected the low end of the price ranges he discovered online. The estate acknowledged that defendant made arguments throughout the trial regarding the absence of expert testimony, but opined that there was no need for expert testimony when Brian was able to assign a value to the items and explain how he did so. According to Brian, the property he could value was worth $51,450, and the estate urged the jury to award damages in that amount.

Defendant's closing argument focused primarily on the notion that the estate donated its property to defendant, but also addressed valuation. Defendant argued that "in finding [the] value of something, especially an antique, most people's common sense would say get an expert and get an appraisal to tell you what it is," but Brian instead chose to rely on his personal opinions. The estate addressed that point again in rebuttal, emphasizing Brian's testimony that there was no need for an appraisal of the property when the estate had no intention of selling it. The jury was released after closing arguments and directed to return the following week for final instructions and deliberations.

The trial court addressed the parties' disagreements regarding jury instructions when trial resumed the next week. Relevant to plaintiffs' argument on appeal, defendant opposed the estate's request for a special jury instruction indicating that the jury "could consider the testimony of Brian Herschfus, as owner of the converted property, as to the value of the converted Property." Defendant reasoned that Brian lacked an adequate basis for his valuation testimony because he did not have invoices or receipts for the items, did not know who manufactured most of the items or

---

of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Id*. (quotation marks and citation omitted). "The proper interpretation and application of a court rule is a question of law, which this Court reviews do novo." *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005).

when they were made, and Brian was not the original purchaser, but instead acquired title by virtue of inheritance. The estate opined that the sufficiency of Brian's testimony had already been addressed at the summary disposition phase, Brian testified regarding how he determined the value of the converted property, and it was up to the jury whether to believe him. Although it appears that the trial court agreed with the estate in theory, it opined that a special instruction was unnecessary when the preliminary instructions already explained that the jury was to determine whether, and to what extent, each witness should be believed.

Inasmuch as MCR 2.513(N)(1) speaks in mandatory terms, see *Sanders v McLaren-Macomb*, 323 Mich App 254, 269; 916 NW2d 305 (2018) (acknowledging that the term "must" refers to something mandatory), the trial court obviously erred by insisting that the parties proceed with closing arguments before informing the parties of the final jury instructions. But plaintiffs have not established a resulting prejudice. Plaintiffs reason that had the estate "been able to address the issue of how the jury must calculate damages as it relates to evidence and testimony regarding conversion and specifically statutory conversion, the Jury would have awarded damages consistent with its findings in favor of the Estate on common law conversion, statutory conversion and trespass to chattels." But the estate's attorney *did* argue that the jury should assess damages in accordance with Brian's testimony, and plaintiffs have not raised the trial court's failure to provide the special instruction requested by the estate as a claim of error on appeal. More importantly, even if the trial court had advised the parties before closing arguments that it would not provide the requested special instruction, we are unable to imagine how that knowledge would have altered the estate's closing argument. Brian's testimony was the only evidence regarding the value of the converted property, leaving the estate without an alternative argument regarding how the jury should determine the amount of damages to award. Under these circumstances, plaintiffs have not established prejudice requiring a new trial. The trial court did not abuse its discretion by denying the estate's motion for a new trial with respect to this issue.

### G. EX PARTE COMMUNICATIONS WITH JURORS

Next, plaintiffs argue that it was entitled to a new trial because the trial court responded to a jury question in violation of MCR 2.513(N)(2). We agree that the trial court erred by engaging in a substantive ex parte communication with the jury, but again conclude that the court did not abuse its discretion by denying a new trial on that basis.[15]

MCR 2.513(N)(2) provides as follows:

As part of the final jury instructions, the court shall advise the jury that it may submit in a sealed envelope given to the bailiff any written questions about the jury instructions that arise during deliberations. After orally delivering the final jury

---

[15] We review a trial court's ruling regarding a motion for a new trial for an abuse of discretion, but we review de novo any corresponding questions of law. *Dorsey*, 338 Mich App at 223. "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Id.* (quotation marks and citation omitted). "The proper interpretation and application of a court rule is a question of law, which this Court reviews do novo." *Haliw*, 471 Mich at 704.

-17-

instructions, the court shall invite the jurors to ask any questions in order to clarify the instructions before they retire to deliberate.

> If questions arise, the court and the parties shall convene, in the courtroom or by other agreed-upon means. The question shall be read into the record, and the attorneys shall offer comments on an appropriate response. The court may, in its discretion, provide the jury with a specific response to the jury's question, but the court shall respond to all questions asked, even if the response consists of a directive for the jury to continue its deliberations.

Once again, the trial court's obligation to convene the parties, read the jury's question in the record, and allow the attorneys to offer comments on an appropriate response is articulated in mandatory terms. See *Smitter v Thornapple Twp*, 494 Mich 121, 136; 833 NW2d 875 (2013) (" 'shall' generally indicates a mandatory directive"). Here, the trial court received a question from the jury during its deliberations asking, "Can we determine the amount $ value of conversion?" Rather than complying with the requirements MCR 2.513(N)(2), without advising the parties, the trial court responded in writing, stating, "[Y]es please refer to the jury instructions[.]" The court did not inform the parties of the question or response until it was filed with the court clerk after the trial.

In *People v France*, 436 Mich 138; 461 NW2d 621 (1990), the Supreme Court considered the appropriate remedy for violations of a former court rule that precluded the trial court from communicating with the jury without notifying the parties and permitting them to be present. See *id*. at 142 n 2 (quoting former MCR 6.414(A)). Although it considered the matter in the context of a criminal case, the Court explicitly indicated that its decision would apply to civil cases as well. *Id*. at 142 n 3. The Court emphasized that "[a]ny communication with a jury not in conformance with the court rules has been, and continues to be discouraged," but reversal on the basis of ex parte communication is only necessary upon a showing of "any reasonable possibility of prejudice." *Id*. at 142. The Court explained:

> We find that communication with a deliberating jury can be classified into one of three categories: substantive, administrative, or housekeeping. Upon appeal, it is incumbent upon a reviewing court to first categorize the communication that is the basis of the appeal. This will necessarily lead to the determination of whether a party has demonstrated that the communication was prejudicial, or that the communication lacked any reasonable prejudicial effect.

> Substantive communication encompasses supplemental instructions on the law given by the trial court to a deliberating jury. A substantive communication carries a presumption of prejudice in favor of the aggrieved party regardless of whether an objection is raised. The presumption may only be rebutted by a firm and definite showing of an absence of prejudice.

> Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication carries no presumption. The failure to object when made aware of the communication will be

taken as evidence that the administrative instruction was not prejudicial. Upon an objection, the burden of persuasion lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect. Alternatively, a reviewing court, upon its own volition, may find that an instruction which encourages a jury to continue its deliberations was prejudicial to the defendant because it violated the ABA Standard Jury Instruction 5.4(b), as adopted by this Court in *People v Sullivan*, 392 Mich 324; 220 NW2d 441 (1974).

Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. A housekeeping communication carries the presumption of no prejudice. First, there must be an objection to the communication, and then the aggrieved party must make a firm and definite showing which effectively rebuts the presumption of no prejudice. [*Id*. at 142-144.]

Here, the communication involved an instruction regarding the law, i.e., whether the jury could determine the value of the converted property. Such a communication is substantive. *Id*. at 143.

But the presumption of prejudice arising from substantive ex parte communication can be overcome by "showing that the instruction was merely a recitation of an instruction originally given without objection, and that it was placed on the record." *Id*. at 163 n 34. Here, the trial court instructed the jury before deliberations that it had a duty to "determine the facts from the evidence received in open court," and that as the fact-finder, it "must determine which witnesses to believe and what weight to give their testimony." With respect to damages, the court instructed:

If your verdict is for the Plaintiff, you shall determine its damages and return a verdict in that amount. In this case, Plaintiff Estate claims damages for the value of its property arising out of the actions of Defendant Knightsbridge by transferring, donating or and [sic]—or destroying furniture and furnishings. If you decide that Plaintiff Estate is entitled to such damages, the amount should be measured by the value of the property or its replacement value.

The trial court's affirmative response and reference to the previously provided instructions, had the same effect as reciting its earlier instructions. Neither party objected to the foregoing instructions when they were given on the record. Because the trial court's response added nothing new to the instructions originally provided, there is no basis to find a reasonable possibility of prejudice to the estate arising from the trial court's ex parte communication with the jury. *Id*. at 163 n 34, 165. The trial court erred, but it did not abuse its discretion by denying the estate's motion for a new trial with respect to this issue.

## H. DAMAGES

Plaintiffs next contend that the trial court erred by denying their motion for judgment notwithstanding the verdict (JNOV), additur, or a new trial, because the jury's damages award was

inadequate in light of what plaintiffs describe as Brian's "uncontroverted" valuation testimony. We disagree.[16]

Plaintiffs argue that they are entitled to JNOV, additur, or a new trial because the jury ignored uncontroverted evidence of monetary damages. See *Arnold v Darczy*, 208 Mich App 638, 640; 528 NW2d 199 (1995) (concluding that trial court properly exercised discretion by granting a new trial or additur when jury failed to award future damages despite uncontroverted evidence regarding permanent injury and lingering symptoms). They reason that because defendant offered no evidence to contradict Brian's testimony on the value of the converted property, the low damages figure must mean the jury ignored Brian's testimony. Plaintiffs accurately state the legal principles involved, but their position lacks merit because the evidence regarding damages *was* controverted, even if not by way of direct evidence of values different than those claimed by Brian.

Generally, when a jury verdict ignores uncontroverted evidence of damages, the verdict is inadequate and must be reversed. *Bosak v Hutchinson*, 422 Mich 712, 732; 375 NW2d 333 (1985). To determine whether evidence is "uncontroverted" and reversal is warranted, requires the court to consider the total body of evidence. See *id*. at 730-736.

In *Bosak v Hutchinson*, the plaintiff lost four fingers from his left hand in a workplace injury and was awarded $100,000 in damages by a jury. *Id.* at 717. The plaintiff challenged the trial court's denial of additur or a new trial, maintaining that his lost wages alone exceeded the jury's verdict. *Id*. at 730. At the time of his accident, the plaintiff was working fulltime and completing an ironworking apprenticeship. *Id*. at 732. The plaintiff testified that he was unable

---

[16] A trial court's ruling on a motion for JNOV is reviewed de novo. *Dorsey*, 338 Mich App at 230. "In reviewing a decision regarding a motion for JNOV, this Court must view the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 752; 880 NW2d 280 (2015) (quotation marks and citation omitted). "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id*. (quotation marks and citation omitted).

"This Court reviews the trial court's decision on a motion for additur or, in the alternative, a new trial, for an abuse of discretion." *Hill v Sacka*, 256 Mich App 443, 460; 666 NW2d 282 (2003). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Dorsey*, 338 Mich App at 223 (quotation marks and citation omitted). "The trial court may grant a new trial whenever a party's substantial rights have been materially affected, such as where the jury's verdict was clearly or grossly inadequate." *Hill*, 256 Mich App at 460, citing MCR 2.611(A)(1)(c). In the case of an inadequate verdict, the trial court is alternatively authorized to increase the verdict, though "that authority is limited in that the court must allow the defendant to accept or reject the court's award of additur in lieu of a new trial." *Hill*, 256 Mich App at 460, citing MCR 2.611(E)(1). "When reviewing a trial court's decision on additur, this Court must consider whether the jury award was supported by the evidence." *Hill*, 256 Mich App at 460.

to complete the apprenticeship because he could not pass a welding course with only one hand. *Id.* Plaintiff presented the jury with evidence of his hourly wage at the time of his injury, as well as the increased hourly rates he would have received after completing the apprenticeship. *Id.* Comparing his actual earnings against the projected figures, the plaintiff sought out-of-pocket losses of approximately $180,000, but the jury awarded only $100,000 in damages. *Id.* at 719, 733.

The Supreme Court rejected the plaintiff's claim of error predicated on the assumption he was unable to return to ironwork, reasoning that the testimony on that point was disputed. *Id.* at 733. Although the plaintiff testified that he could not complete his apprenticeship, he also indicated that he refrained from returning to that field out of concern that his injury might endanger himself or others and because his wife feared for his safety. *Id.* There was also evidence that the ironworkers' union allowed the plaintiff to continue the apprenticeship, even knowing of the nature and extent of his injury, thus "giving rise to the possible inference that he could return to ironwork," as well as evidence that the plaintiff never responded to his employer's inquiry about making arrangements to return to work. *Id.* The Court concluded that the conflicting evidence regarding the plaintiff's ability to return to ironwork placed the amount of his out-of-pocket losses in dispute. *Id.* at 733-734. *Bosak* holds that the general rule regarding "uncontroverted evidence" of damages does not require reversal of a jury award in a lesser amount when the reduction may be warranted on the basis of nonmonetary considerations. *Id.* at 730-736.

Here, Brian was the only witness to offer testimony regarding the value of the estate's converted property, but that does not mean the jury was obligated to accept his testimony as true and award damages in the amounts he identified. Rhonda testified that she was forced to sell the building because it was in poor condition and she could not afford the upkeep. Rhonda indicated that the "whole building had water leaks," to the point that she had to "sweep up water up to my ankles" every time it rained. The defense introduced photographs of the building that Rhonda took some time after Jack died, and she noted that several of the photographs showed substantial water damage. Rhonda also indicated that much of the building's contents was donated to Salvation Army before she sold the building, though some items remained because Salvation Army did not want any items that were moldy or unsalvageable.

In describing the property at issue in this case, Brian emphasized that the estate's furniture was well-maintained and in phenomenal condition. The values he assigned to each item were presumably premised on items in a similarly pristine condition. Yet there was plenty of evidence from which the jury could infer that when the property was donated or otherwise disposed of by defendant, its value was substantially lessened by water damage. Because such a conclusion would support the jury's decision to award only nominal damages, the trial court did not abuse its discretion by denying the estate's motion for additur or a new trial or err by denying JNOV.

## I. ATTORNEY FEES AND COSTS

Plaintiffs also argue that the trial court erred by denying the estate's postjudgment motion for attorney fees and costs under MCL 600.2919a(1).[17] We disagree.[18] MCL 600.2919(a)(1) permits the award of attorney fees and costs, but it does not require them; therefore, the trial court did not abuse its discretion by denying the postjudgment motion for attorney fees and costs when the jury did not award them. See *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 451; 844 NW2d 727 (2013) (*Aroma Wines I*).

In *Aroma Wines I*, the plaintiff sought damages against the defendant for common-law conversion, statutory conversion, and other legal theories. *Id*. at 444. The trial court entered a directed verdict in favor of the defendant concerning the statutory conversion claim, but the jury found the defendant liable for common-law conversion and determined that the value of the converted property was $275,000. *Id*. at 444-445. On appeal, this Court held that the trial court erred by granting a directed verdict. *Id*. at 446-449. The plaintiff opined that a new trial was unnecessary because, in light of the common-law conversion verdict, the error could be rectified by simply awarding treble damages and attorney fees under MCL 600.2919a. *Id*. at 449. This Court disagreed, explaining:

> MCL 600.2919a(1) provides that a person damaged under the statute "*may* recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees[.]" (Emphasis added.) The term "may" is permissive and indicates discretionary activity. *Haring Charter Twp v Cadillac*, 290 Mich App 728, 749; 811 NW2d 74 (2010). Thus, under the language in MCL 600.2912a(1) [sic: MCL 600.2919a(1)], treble damages and attorney fees are discretionary. Accordingly, whether to award treble damages is a question for the trier of fact, and we cannot simply order treble damages upon a finding of conversion. [*Id*. at 449-450 (first alteration in original).]

---

[17] Plaintiffs also argue on appeal that the estate was entitled to costs as the prevailing party in this action. This issue was not raised below and we decline to address it for the first time on appeal. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-5 (holding that in civil cases, Michigan follows the so-called "raise or waive" rule of appellate review, under which failure to timely raise an issue before the trial court constitutes waiver of that issue on appeal).

[18] Review of a trial court's decision regarding a motion for attorney fees involves questions of law and fact. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 451; 844 NW2d 727 (2013) (*Aroma Wines I*). Questions of law are reviewed de novo, while factual findings are reviewed for clear error. *Id*. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). The ultimate decision whether to award attorney fees is reviewed for an abuse of discretion, which "occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted).

Although the analysis in *Aroma Wines* focused primarily on whether treble damages are to be awarded automatically under MCL 600.2919a, we find its reasoning equally applicable to attorney fees because recovery is premised on the same discretionary language. Thus, an award of attorney fees and costs under MCL 600.2919a is permissive, not mandatory, and to be decided by the trier of fact. *Id.* Because the jury did not award attorney fees or costs as part of its verdict for statutory conversion, the trial court did not abuse its discretion by declining to do so after the trial.

## J. RELEASE OF ESCROW FUNDS

Finally, plaintiffs contend that the trial court erred by releasing funds it had previously ordered defendant to deposit with the court clerk. Defendant, on the other hand, argues that review of that issue is beyond the scope of our jurisdiction in plaintiffs' appeal by right because it challenges an order entered after the final order from which plaintiffs appealed. We agree with defendant.

Jurisdictional questions are reviewed de novo. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013). "Under the court rules, this Court has jurisdiction over appeals from a 'final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6) . . . .' " *Chen v Wayne State Univ*, 284 Mich App 172, 192; 771 NW2d 820 (2009). In most cases, when a claim of appeal from a final order is filed timely, the appellant may also raise "all issues related to other orders entered in the case." *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 500 n 1; 730 NW2d 481 (2007). This rule, however, does not extend to orders entered after the claim of appeal has been filed. *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193, 197; 452 NW2d 471 (1989).[19] Plaintiffs filed their claim of appeal on December 29, 2021. The trial court did not enter its order releasing the escrowed funds to defendant until January 13, 2022. The latter ruling is, therefore, not part of plaintiffs' claim of appeal by right. Defendant is correct that this Court lacks jurisdiction to resolve this issue in its current procedural posture.

## III. DEFENDANT'S CROSS-APPEAL

## A. DIRECTED VERDICT

In its first issue on cross-appeal, defendant argues that the trial court erred by submitting the estate's statutory conversion claim to the jury because there was no evidence that defendant converted the estate's property to defendant's own use. We disagree.[20]

---

[19] Although *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193; 452 NW2d 471 (1989), is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 372 n 3; 1 NW3d 373 (2022).

[20] We review de novo a trial court's decision on a motion for directed verdict. *Aroma Wines II*, 497 Mich at 345. "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Id.*

As stated, statutory conversion differs from common-law conversion in that the property at issue must be converted to the defendant's "own use." MCL 600.2919a(1)(a); *Aroma Wines II*, 497 Mich at 355. Construing that statutory phrase, the Supreme Court explained:

> In particular, the word "own" modifies "use," suggesting that any use of the converted property must be intentionally geared toward a purpose personal to the person converting the property. When examining the phrase "own use" in this light, it becomes clear that the Legislature did not seek to restrict the application of MCL 600.2919a(1)(a) on the basis of the intended or common purpose of the converted property. Rather, the only restriction to the application of MCL 600.2919a(1)(a) to a common-law conversion offense is that it must be used for a purpose personal to the converter. Therefore, we agree with the Court of Appeals' definition of "use" and hold that conversion "to the other person's own use" requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose. [*Id*. at 358-359.]

The plaintiff in *Aroma Wines II* stored wine in climate-controlled space it rented from the defendant. *Id*. at 341. After the plaintiff fell behind on its rental payments, the defendant moved the wine to a different location without climate control. *Id*. The plaintiff alleged that the move was undertaken to allow the defendant to rent the climate-controlled space to higher-paying customers. *Id*. at 341-342. The defendant, conversely, asserted that the move was necessary to facilitate renovations of its warehouse. *Id*. at 342. The Supreme Court reasoned that even accepting the defendant's explanation as true, a factfinder could determine that relocating the wine in violation of the rental contract to advance the expansion project constituted employing the wine to the defendant's own use. *Id*. at 360. And if the jury instead accepted evidence that the defendant moved the wine to sell the space to another customer, that too could support the conclusion that the defendant converted the wine to its own use. *Id*. at 360-361. Thus, regardless of which theory the jury credited, it could find the defendant liable for statutory conversion, and the defendant was not entitled to a directed verdict. *Id*. at 361.

Here, Rhonda testified that the salvageable contents of the building were donated to Salvation Army before the building was sold, but Salvation Army would not accept the items that were damaged by water or mold. The damaged items were apparently left behind or otherwise disposed of. Defendant argues that this in no way constitutes converting the property to its own use because defendant discontinued any control or dominion over the property. We disagree.

When it was in operation, defendant received donated goods for resale. If defendant donated the estate's property to another charity, Salvation Army, a factfinder could conclude that doing so advanced a purpose personal to defendant, namely, charitable distribution of the subject property. It is immaterial that the donation ended defendant's dominion and control over the property because the very act of giving it away was an exercise of dominion inconsistent with the estate's ownership rights.

A factfinder could also determine that disposing of the estate's property along with the rest of the building's contents satisfied the "own use" element. Much in the same way that relocating the wine to facilitate renovations could be viewed as employing the wine for a purpose personal

to the defendant in *Aroma Wines II*, defendant's disposal of the estate's property in the process of selling the building could be viewed as employing the property for defendant's own use in this case. Viewing the evidence in the light most favorable to the estate, the jury could reasonably determine that defendant converted the property to its own use. The trial court did not err by denying defendant's motion for directed verdict.

## B. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by effectively instructing the jury that defendant committed statutory conversion. Our review of this issue is precluded because defendant waived its challenge to the instruction at issue below.

"A party is deemed to have waived a challenge to the jury instructions when the party has expressed satisfaction with, or denied having any objection to, the instructions as given." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 545; 854 NW2d 152 (2014). "A waiver extinguishes any instructional error and appellate review is precluded." *Id*. Here, defendant objected to the estate's proposed jury instruction indicating that donating the property constituted statutory conversion, reasoning that donation "does not constitute and cannot constitute the exception that [the estate is] asking in this special instruction." But after some discussion of whether defendant previously agreed to the instruction and before the trial court ruled on the matter, defense counsel said: "I don't see how this is going to tip the scales one way or the other in this case. So, but, it's okay. Let—let it be okay at this point." By withdrawing the objection and conceding that it was "okay" to give the instruction, defendant waived review of any alleged error relating to this instruction.

## C. POSTJUDGMENT CONSIDERATION OF WAIVED ISSUES

Defendant also argues that the trial court erred by even entertaining the estate's motion for attorney fees, costs, and treble damages because the estate waived those issues by failing to submit them to the jury.[21] We agree that the trial court lacked authority to award treble damages after the matter was not submitted to the jury, but it did not abuse its discretion by entertaining the estate's postjudgment motion merely because it included a request for treble damages.

At the outset, we observe that defendant preserved review of this argument as it relates to treble damages by raising the same argument before the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (holding an issue is generally preserved for review if it was raised before or decided by the lower court) The same cannot be

---

[21] Whether a litigant has waived a right is a question of law that this Court reviews de novo. *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004). This Court reviews a trial court's decision regarding whether to entertain a motion for an abuse of discretion. See, e.g., *Kemerko Clawson, LLC v RXIV Inc*, 269 Mich App 347, 349; 711 NW2d 801 (2005) (reviewing trial court's refusal to consider untimely motion). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Dorsey*, 338 Mich App at 223 (quotation marks and citation omitted).

said of defendant's argument regarding attorney fees and costs. In its response to the estate's motion, defendant argued that it was up to the court to determine whether to award attorney fees and, if so, in what amount. "Judicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Ford Motor Co,* 221 Mich App at 382. Because defendant advanced the opposite position below by arguing that recovery of attorney fees under MCL 600.2919a(1) was a discretionary matter to be decided by the court, we will not allow defendant to now claim that the trial court's consideration of the estate's motion was erroneous.[22] See *Kern v Kern-Koskela*, 320 Mich App 212, 238; 905 NW2d 453 (2017) ("A party may not claim error premised on an error to which he contributed by plan or negligence.") (quotation marks and citation omitted).

In *Aroma Wines I*, this Court concluded that recovery of treble damages for statutory conversion was a discretionary matter to be decided by the trier of fact. *Aroma Wines I*, 303 Mich App at 449. Relying on this conclusion, defendant maintains that the trial court should not have even entertained the estate's postjudgment request for three times the damages awarded by the jury because failure to submit the issue of treble damages to the jury constituted waiver. Although the estate may have forfeited treble damages, we disagree that it waived the issue. See *In re Bazakis Guardianship*, 342 Mich App 144, 163; 342 Mich App 144 (2022) (noting that waiver requires "an affirmative expression of assent," while forfeiture is "a failure to timely assert a right") (citations omitted), rev'd in part on other grounds 1 NW3d 294 (2024). Thus the barrier to the trial court's consideration was more a matter of forfeiture than waiver. See *In re Bazakis Guardianship*, 342 Mich App at 163.

Nonetheless, binding caselaw dictates that the question of treble damages is a matter for the trier of fact—in this case, the jury—and courts are not to simply order treble damages after the fact merely because the factfinder found the defendant liable for conversion. *Aroma Wines I*, 303 Mich App at 450. But the fact that the trial court could not retroactively award treble damages does not mean that it abused its discretion by considering the estate's motion. The trial court's judgment indicated that it did not resolve the last pending matter or close the case because "costs and reasonable attorney fees under MCL 600.2919a(1) remain to be determined by the Court." It directed the estate to file a motion to resolve those issues. Regardless of whether this statement should have been included in the judgment, it would be an absurd result for the trial court to first order the estate to move for fees and costs, then refuse to hear the motion because it also included a forfeited request for treble damages. Under these circumstances, it was not outside the range of reasonable and principled outcomes for the trial court to entertain the estate's motion.

## D. VALUATION TESTIMONY

Finally, defendant argues that the trial court erroneously admitted Brian's testimony regarding the value of the estate's property, which defendant claims was unauthenticated and incorporated inadmissible hearsay from the internet sources. We disagree in both regards.

---

[22] In any event, any error in the trial court's decision to hear the motion was harmless when the trial court ultimately denied all attorney fees and costs.

Defendant's evidentiary arguments are subject to different standards of review because the hearsay argument is preserved and the authentication argument is not. Defendant's hearsay argument is preserved because defendant objected to Brian's valuation testimony on that basis at trial. "To preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 709-710; 922 NW2d 662 (2018). Prior to trial and immediately before Brian's testimony, defendant objected to Brian testifying regarding the value of the estate's property because he was not an expert and his testimony would be hearsay.[23] When Brian began to testify about his internet research into valuation, defendant renewed its objection and argued that the estate's internet exhibits were hearsay and that Brian lacked personal knowledge from which to determine the property values. The trial court excluded the exhibits as hearsay, but allowed Brian to testify about his belief regarding the value of the property. To the extent defendant continues to maintain that Brian's testimony was inadmissible on hearsay grounds, that issue is preserved, and we review the trial court's decision to admit the evidence for abuse of discretion. See *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153; 908 NW2d 319 (2017). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Dorsey*, 338 Mich App at 223 (quotation marks and citation omitted).

But defendant's alternative argument regarding authentication of the underlying information is unpreserved because defendant raises it for the first time on appeal. As stated, Michigan generally follows the so-called waive-or-raise rule for appellate errors in civil cases. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-5. But one of the myriad exceptions to the raise-or-waive rule are unpreserved evidentiary issues, which are subject to review for plain error affecting substantial rights. See *Wischmeyer v Schanz*, 449 Mich 469, 483; 536 NW2d 760 (1995). See also MRE 103(e); *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 601; 997 NW2d 755 (2022) "To demonstrate a plain error, a party must show: (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected [the party's] substantial rights." *Mr Sunshine*, 343 Mich App at 601 (quotation marks and citation omitted; alteration in original). Plain error affects substantial rights if it prejudiced the party claiming error by affecting the outcome of the proceedings. *Id*.

Brian's testimony did not violate the rules regarding authenticity. Defendant devotes most of its argument regarding this issue to a lengthy discussion of authentication under MRE 901 and the authentication problems that arise with materials from the internet. Regarding authentication, MRE 901(a) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In other words, "to authenticate a piece of evidence, the

---

[23] Defendant's statement of this question asked, in part, whether Brian's testimony should have been excluded because he was not qualified as an expert. Beyond noting its objection below on the basis of Brian's lack of expertise, defendant has not advanced any argument as to whether expert testimony was required. When an appellant fails to present a substantive argument regarding an issue raised in the statement of questions presented, this Court treats the issue as abandoned. *Franks v Franks*, 330 Mich App 69, 109 n 5; 944 NW2d 388 (2019).

proponent of that evidence bears the burden of bringing forth 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *Mitchell*, 321 Mich App at 155, quoting MRE 901(a). While the rule does not expressly exclude trial testimony from its scope, it is difficult to comprehend how trial testimony could be anything other than what it purports to be, i.e., testimony. In light of the trial court's exclusion of the estate's proposed exhibits from the internet, defendant's authentication argument is unpersuasive and falls far short of plain error.

Defendant's underlying position is more accurately characterized as challenging the foundation for Brian's lay opinion regarding the value of the converted property. Opinion testimony offered by a lay witness is governed by MRE 701, which allows lay opinions that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Defendant's argument only implicates the first requirement.[24] Brian's opinions were based on his own recollection of the converted property and his personal understanding of the market value of comparable items. That the documentary evidence reflecting the cost of comparable items was excluded does not alter the fact that Brian personally researched the issue, found prices at which those items were listed for sale, and used those prices to form an opinion regarding the value of the converted property. Stated differently, Brian's opinion was rationally based on his perception of the market. Even expert appraisers have been known to rely on internet-based evidence to determine property values. See, e.g., *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 683, 688-689; 840 NW2d 168 (2013).

Defendant also contends that Brian's testimony was inadmissible on hearsay grounds. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Defendant reasons that Brian introduced out-of-court statements of value made by third-party declarants (the unnamed internet sources), thereby violating the rule against hearsay. See MRE 802 ("Hearsay is not admissible except as provided by these rules."). We disagree.

The valuation issue first arose at trial regarding the estate's piano. Brian testified that it was worth $18,500. When asked how he arrived at that figure, Brian answered: "I went online, and I checked to see the same make, the approximate year, the quality for what it was selling for. There were some that were more expensive, and I took one of the lower ones . . . ." Without explicitly saying so, Brian effectively testified that someone was willing to sell a similar piano for $18,500, thereby conveying the unnamed source's out-of-court statement to the jury. Brian offered similar explanations regarding many of the other converted items.

By definition, "[a] statement that is not offered to prove the truth of the matter asserted is not hearsay." *Airgas Specialty Prod v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530 (2021). The matter asserted in the out-of-court statement was that the price of the unnamed source's piano was $18,500. The cost of *that* piano was not at issue in this case, and the estate did not elicit Brian's testimony to prove the truth of the assertion. Rather, the statement was offered only to explain the basis of Brian's lay opinion regarding the value of the *estate*'s comparable piano. Indeed, the general measure of damages for conversion is the fair

---

[24] Evidence regarding the value of the converted property was undoubtedly helpful to determination of a fact in issue, namely, the damages to which the estate was entitled.

market value of the item at the time of conversion. See *Bernhardt v Ingham Regional Med Ctr*, 249 Mich App 274, 280-281; 641 NW2d 868 (2002). "Fair market value generally refers to the amount of money that a ready, willing, and able buyer would pay for the asset on the open market[.]" *Franks v Franks*, 330 Mich App 69, 110; 944 NW2d 388 (2019) (quotation marks and citation omitted; alteration in original). Brian's reliance on the price of similar items was an appropriate basis for Brian's opinion, and the trial court's allowance of his testimony was not outside the range of reasonable and principled outcomes.

## IV. CONCLUSION

The trial court erred by granting summary disposition of Wood Kull's claims on the basis of the statute of frauds, MCL 566.132(1)(a) and (b), because the agreement for payment of attorney fees was capable of being performed within one year and there were questions of fact as to whether the agreement involved a collateral promise to answer for the debt of another. We, therefore, reverse the trial court's order regarding defendant's motion for summary disposition, but only as it relates to Wood Kull's claims, and remand for further proceedings. In all other respects, we affirm. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates